Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

# UNITED STATES DISTRICT COURT

for the

Eastern District of Arkansas

Central Division

MAR 17 2025

TAMMY H. DOWNS, CLERK

By: _____ DEP CLERK

|  |  |
|---|---|
| Steven Magee | ) |
|  | ) |
| *Plaintiff(s)* | ) |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) |
| *please write "see attached" in the space and attach an additional* | ) |
| *page with the full list of names.)* | ) |
| -v- | ) |
|  | ) |
|  | ) |
|  | ) |
| New Balance Athletics, Inc. | ) |
|  | ) |
| *Defendant(s)* | ) |
| *(Write the full name of each defendant who is being sued. If the* | ) |
| *names of all the defendants cannot fit in the space above, please* | ) |
| *write "see attached" in the space and attach an additional page* | ) |
| *with the full list of names.)* | ) |

Case No. 4:25-cv-00265-DPM

*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)*  ☒ Yes  ☐ No

## COMPLAINT FOR A CIVIL CASE

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Steven Magee |
| Street Address | 8407 Bandera Road |
| City and County | San Antonio |
| State and Zip Code | Texas 78250 |
| Telephone Number | 2108338090 |
| E-mail Address | hooplifeonline@yahoo.com |

This case assigned to District Judge Marshall
and to Magistrate Judge Volpe

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**B.**    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | New Balance Athletics, Inc. |
| Job or Title *(if known)* | |
| Street Address | 100 Guest Street |
| City and County | Boston |
| State and Zip Code | MA 02135 |
| Telephone Number | (617) 783-4000 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |

E-mail Address *(if known)* _____

## II.     Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question          ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.     If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

_____

### B.     If the Basis for Jurisdiction Is Diversity of Citizenship

1.     The Plaintiff(s)

    a.     If the plaintiff is an individual

The plaintiff, *(name)*   Steven Magee _____ , is a citizen of the State of *(name)*   Texas _____ .

    b.     If the plaintiff is a corporation

The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ ,
and has its principal place of business in the State of *(name)*

_____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.     The Defendant(s)

    a.     If the defendant is an individual

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

The defendant, *(name)* _____ , is a citizen of

the State of *(name)* _____ . Or is a citizen of

*(foreign nation)* _____ .

b.    If the defendant is a corporation

The defendant, *(name)*    New Balance Athletics, Inc.    , is incorporated under

the laws of the State of *(name)*    Massachusetts    , and has its

principal place of business in the State of *(name)*    Massachusetts    .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

18,000,000

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

Plaintiff Steven Magee ("Steven Magee" or "Plaintiff") for its Complaint against New Balance Athletics, Inc. ("New Balance", or "Defendant") for Trademark Infringment in violation of the Plaintiff's Trademark rights which caused harm to the Plaintiff's goodwill.

CLAIM I. Trademark Infringement in Violation of 15 U.S.C. § 1114
CLAIM II. Recovery for Violation of Rights 15 U.S.C. §1117
CLAIM III. Unfair Competition 15 U.S.C. §45
CLAIM IV. False Designation of Origin 15 U.S.C. § 1125(a)
CLAIM V. Common Law Trademark Infringement

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

A judgement against New Balance Athletics, Inc. for Trademark Infringement in Violation of 15 U.S.C. § 1114.85. A judgement of a Recovery for Violation of Rights 15 U.S.C. §1117 against New Balance Athletics, Inc. A judgement against New Balance Athletics, Inc. for Unfair Competition 15 U.S.C. §45. A judgement against New Balance Athletics, Inc. False Designation of Origin 15 U.S.C. § 1125(a). A judgement against New Balance Athletics, Inc. for Common Law Trademark Infringement.A judgement that New Balance Athletics, Inc. used a counterfeit "Hooplife" MARK as defined by 15 U.S.C. §1117 to sale of 9 types of goods for which Plaintiff's "Hooplife" MARK is registered. An award of statutory damages in the amount of $2,000,000 per type of good sold by New Balance Athletics, Inc. as allowed by law 15 U.S.C. §1117 (Recovery for violation of Rights) for the WILLFUL use of the counterfeit "HOOPLIFE" MARK

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        03/15/25

Signature of Plaintiff

Printed Name of Plaintiff        Steven Majee

### B.    For Attorneys

Date of signing:        _____

Signature of Attorney        _____

Printed Name of Attorney    _____

Bar Number        _____

Name of Law Firm _____

Street Address _____

State and Zip Code _____

Telephone Number _____

E-mail Address _____

## us UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| Steven Magee<br>*Plaintiff,*<br><br>V.<br><br>New Balance Athletics, Inc.<br>*Defendant(s)* | (1) Trademark Infringement in Violation of 15 U.S.C. § 1114<br>(2) Recovery for Violation of Rights 15 U.S.C. §1117<br>(3) Unfair Competition 15 U.S.C. §45<br>(4) False Designation of Origin 15 U.S.C. § 1125(a)<br>(5) Common Law Trademark Infringement |

## **COMPLAINT**

Plaintiff Steven Magee ("Steven Magee" or "Plaintiff") for its Complaint for Trademark Infringement in Violation of 15 U.S.C. § 1114, Recovery for Violation of Rights 15 U.S.C. §1117, Unfair Competition 15 U.S.C. §45, False Designation of Origin 15 U.S.C. § 1125(a) and Common Law Trademark Infringement arising under the Lanham Act against New Balance Athletics, Inc. ("New Balance", or "Defendant") in violation of the Plaintiff's Trademark rights. Plaintiff seeks to protect his valuable trademark rights and prevent the unauthorized use of his mark that threatens to cause irreparable harm to his business reputation and goodwill.

## JURISDICTION AND VENUE

1. The plaintiff initially brought a lawsuit against New Balance Athletics, Inc. in the Western District of Texas (San Antonio Division), where Plaintiff voluntarily dismissed the case after determining that the case lacked Personal Jurisdiction against New Balance. The Plaintiff then refiled the matter in the U.S. District Court for the Northern District of Texas (Dallas Division). However, in that matter, (Magee v. Varsity Brands Holding Co Inc et al (Case No. 3:24-cv-00833), the court dismissed the case, ruling that it lacked personal jurisdiction over New Balance Athletics, Inc. as well because the sales occurred in Arkansas, not Texas.

2. Through the court's findings and the Defendant's admissions in that matter, it is confirmed that the United States District Court for the Eastern District of Arkansas has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), as this action arises under the Lanham Act. The claims and events giving rise to this action substantially occurred within this judicial district.

3. Venue is proper and specifically grounded in the Eastern District of Arkansas because a substantial part of the events giving rise to Plaintiff's claims occurred within this judicial district, specifically the infringing products were sold to Arkansas customer(s). The infringing products were

2

sold and manufactured by the Defendant and shipped to the end customer located in Arkansas customer(s), in this judicial district.

4. Personal jurisdiction is established through multiple substantive connections. Defendant conducts substantial business activities within the State of Arkansas and the Eastern District of Arkansas, including but not limited to multiple orders for and the manufacturing of apparel for and shipping products directly to Arkansas customers.

5. Personal jurisdiction is established because the defendant has purposefully availed itself of the privileges of conducting business in Arkansas by operating retail stores in the state, marketing and selling products to customers in Arkansas and deriving revenue from Arkansas customers.

6. Specific jurisdictional factors are established as the origin of the infringing products were initiated by Arkansas-based customer(s) through New Balance Athletics, Inc.'s website, resulting in additional order transactions for a total combined order of infringing products purchased by an Arkansas-based customer(s) within this judicial district by New Balance Athletics, Inc.'s through its self-admitted "payment processor", BSN Sports.

7. Transactional connections to the forum are established. The entire lifecycle of the infringing products is directly connected to this district. The design(s)

originated in Arkansas and the orders were billed, processed and shipped to Arkansas-based customers.

8. Defendant's own admissions support jurisdictional claims. New Balance explicitly acknowledged and admitted that the infringing products were "designed and ordered online by an Arkansas entity" from their website. This initial order resulted in the Arkansas-based customer ordering additional products from the Defendant, resulting in the Defendant selling an approx. egregious 900 products bearing the Plaintiff's "Hooplife" mark.

9.  New Balance billed and then shipped the infringing products directly to a Arkansas customers through its alleged "payment processor".

10. The trademark infringement's primary economic and commercial impact occurred within the Eastern District of Arkansas.

11. All claims arise from the Defendant's interactions with Arkansas-based customers, online transactions processed through Arkansas with direct shipping to Arkansas addresses as noted on all the attached invoices.

12. 28 U.S.C. § 1391(b) supports venue in this district because a substantial part of the events giving rise to the claims occurred here. The Defendant conducts business within this district and the Defendant's actions have direct commercial impact in this jurisdiction.

13. Defendant's activities demonstrate purposeful availment of Arkansas market, foreseeable impact of actions in this district, reasonable and fair exercise of jurisdictional power.

14. A substantial part of the events giving rise to the claim occurred in this judicial district.

15. The defendant conducts business and maintains business relationships within this district. A significant portion of the defendant's commercial activities relevant to this action take place within this jurisdiction.

16. WHEREFORE, Plaintiff respectfully submits that this Court possesses both subject matter and personal jurisdiction, and that venue is proper in the Eastern District of Arkansas.

## **PARTIES**

17. **Plaintiff**

Steven Magee (Owner of "Hooplife" mark) with a principal place of business in Texas.

18. **Defendant**

New Balance Athletics, Inc. with a principal place of business in Massachusetts.

# INTRODUCTION

19. Plaintiff originally filed a Complaint against New Balance Athletics, Inc. in

the Western District of Texas; *See* Magee v. New Balance, Inc. et al

5:2023cv0092. The Plaintiff dismissed the claims against New Balance in

the Western District in recognition of lack of jurisdiction. The Plaintiff then

filed the Complaint in the Northern District of Texas, *See* <u>Magee v. Varsity</u>

<u>Brands Holding Co Inc et al 3:24-cv-00833</u> where he thought the infringing

activity took place due to New Balance's well-known business relationship

with BSN Sports. New Balance thoroughly argued that the sales took place

in Arkansas, not Texas. Based on New Balance's argument the honorable

court agreed and dismissed the Plaintiff's claims without prejudice against

New Balance (the Defendant) for lack of Personal Jurisdiction, stating and

confirming that the sales / activity in the case took place in Arkansas, not

Texas. In New Balance's effort to successfully dismiss claims in the

Northern District of Texas, New Balance Athletics, Inc. (the Defendant)

thoroughly confirmed that jurisdiction and venue are proper in the Eastern

District of Arkansas. New Balance was so determined to get the Plaintiff's

case dismissed for lack of jurisdiction and did so. However, through their

court filings in the Northern District of Texas, some of which were sworn

declaration(s) from New Balance employees, the Defendant admitted to the

infringing activities. In the same way the average customer for athletic apparel would refer to the infringing products, New Balance Athletics, Inc. naturally referred to the infringing products as "HOOPLIFE uniforms" on their own, which are both IDENTICAL to the Plaintiff's mark and listed goods in the Plaintiff's Trademark registrations. Hence, the Plaintiff's claims against the Defendant in the Eastern District of Arkansas. The Defendant's willful infringing activities came after the Plaintiff contacted internal counsel of New Balance, to make New Balance aware of the Plaintiff's trademark rights to the "Hooplife" mark. Even though New Balance was aware of the Plaintiff's trademark rights to the "Hooplife" mark, New Balance infringed and used the Plaintiff's mark in commerce without his consent anyway, confirming their willful use of the Plaintiff's "Hooplife" mark. The Plaintiff contends as follows:

## STATEMENT OF FACTS

20. Below are statements made by New Balance Athletics, Inc. in the Northern District of Texas; *See* Magee v. Varsity Brands Holding Co Inc et al 3:24-cv-00833

a. "This case concerns **athletic uniforms** that never entered Texas. They were designed and ordered online by an Arkansas entity, manufactured by Massachusetts-based and Massachusetts incorporated New Balance in Nicaragua, and then shipped by New Balance from Nicaragua directly to Arkansas."

b. "Instead, Plaintiff advances a theory that New Balance is subject to specific jurisdiction because the online orders for the **"HOOPLIFE" uniforms** at issue were alleged to have been processed by BSN Sports ("BSN"), a Texas-based entity with which New Balance contracts for order and payment processing."

c. "But Plaintiff did not plead, and cannot allege, that the **HOOPLIFE uniforms** at issue were designed, offered, sold, or shipped from these – or any other Texas store."

d. "In fact, the **HOOPLIFE uniforms** at issue were not designed, offered, ordered, manufactured, shipped from, or shipped to Texas."

e. "As set forth in the sworn affidavits of Lamont Morgan, the **HOOPLIFE uniforms** at issue were designed and ordered online, through New Balance's website, newbalanceteam.com."

f. "The **HOOPLIFE jerseys** were designed by an Arkansas-based customer on the website."

8

g. "As is New Balance's practice, the user was then directed to submit the Design Link to BSN, a company with which New Balance contracts for payment processing."

h. "The customer was specifically directed to submit the Design Link through BSN's online website so that the customer could order with New Balance through BSN and then did so."

i. "Crucially, BSN did not design the allegedly infringing athletic apparel, did not produce it, did not ship it, and did not advertise or sell it."

j. "BSN processed online payment and notified New Balance that payment was made, confirming the order."

k. "**New Balance then manufactured the HOOPLIFE uniforms** in Nicaragua **and shipped them directly from Nicaragua to the customer in Arkansas.**"

l. "New Balance did not ship the **HOOPLIFE uniforms** to BSN."

m. "Plaintiff cannot assert that the **HOOPLIFE uniforms** were designed in, ordered in, offered in, manufactured in, shipped from, or shipped to Texas."

n. "These items were manufactured by Massachusetts-based and Massachusetts incorporated New Balance in Nicaragua and then shipped by New Balance from Nicaragua directly to Arkansas."

o. "New Balance never made **HOOPLIFE uniforms** in Texas, never sold or shipped the **HOOPLIFE uniforms** to anyone in Texas, and – as the accused infringing items were designed and commissioned by an Arkansas entity – never even offered to sell the **HOOPLIFE uniforms** to anyone in Texas."

p. "The fact that after the order was made in Arkansas; after the allegedly infringing apparel was manufactured in Nicaragua; and after the apparel was shipped directly from Nicaragua to Arkansas…"

21. Below are statements made by Lamont Morgan, an employee of New Balance Athletics, Inc. in the Western District of Texas; *See* Magee v. New Balance, Inc. et al 5:2023cv0092

a. "I am presently the National Sales Manager, Team Sales, at New Balance, a position I have held since at least 2018. I state the following facts based on my personal knowledge and review of relevant documents."

b. "…the entity referred to by Plaintiff as "the Arkansas entity," for the **HOOPLIFE athletic uniforms** at issue in this case.

c. "These **HOOPLIFE uniforms** were designed by and ordered by HLBA through New Balance's website newbalanceteam.com…"

d. "New Balance manufactured the **HOOPLIFE uniforms** in its Nicaragua factory."

e. "The **HOOPLIFE uniforms** were later shipped directly from New Balance's Nicaragua factory to HLBA in Little Rock, Arkansas."

f. "While there are certain products that BSN ships to customers, the **HOOPLIFE uniforms** at issue were not such products."

g. "I understand that Plaintiff has acknowledged this in his briefing and has stated that New Balance (and not BSN) manufactured and shipped the **HOOPLIFE uniforms** to BSN."

h. "BSN also did not advertise or sell the **HOOPLIFE uniforms**."

i. "The **HOOPLIFE uniforms** were not designed, offered, ordered, manufactured, shipped from, or shipped to Texas"

j. **"I declare under penalty of perjury that the foregoing is true and correct."**

22. The honorable Northern District of Texas granted New Balance's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, and

11

dismissed the Plaintiff's case against the Defendant without Prejudice stating the following in its order:

    a. "…for **Hooplife Basketball materials** for purchases made and billed in Arkansas and shipped to Little Rock, Arkansas."

    b. " New Balance is headquartered and incorporated in Massachusetts and "has not sold or offered for sale any products bearing the alleged HOOPLIFE trademark within the State of Texas,"

    c. "Indeed, Plaintiff's evidence is actually consistent with Defendant's claim that the alleged **sales of Hooplife products occurred in Arkansas and the products were delivered to Arkansas** while a third-party in Texas processed invoices."

    d. "Plaintiff proffers nothing to rebut Defendant's claim that contrary to Plaintiff's assertions, it **never sold Hooplife products in Texas**. Indeed, Plaintiff's evidence is actually consistent with Defendant's claim that the alleged **sales of Hooplife products occurred in Arkansas and the products were delivered to Arkansas** while a third-party in Texas processed invoices."

23. Below are several screenshots of New Balance arguing lack of jurisdiction, *See* Magee v. Varsity Brands Holding Co Inc et al 3:24-cv-00833 in the

Northern District Court of Texas while simultaneously admitting to their

infringing activities:

Plaintiff's[1] opposition (ECF No. 27) confirms that New Balance is not subject to personal jurisdiction in this matter.

Plaintiff's opposition relies on factual assertions that are not alleged in the complaint and are largely unsworn. They should not be credited; unverified allegations cannot rebut the sworn affidavits submitted by New Balance. Moreover, even if the allegations in Plaintiff's opposition brief were credited (and they should not be), they are largely irrelevant to this dispute and still fail to substantiate Plaintiff's burden to show the Court can exercise personal jurisdiction over New Balance.

Put simply, no fact alleged in the Complaint (ECF No. 1) or in Plaintiff's opposition brief establishes that New Balance, which is incorporated and headquartered in Massachusetts, is subject to general jurisdiction in Texas. It is not. Plaintiff's retailer-based theory of general jurisdiction has been universally rejected.

It is also clear that specific personal jurisdiction, which Plaintiff did not plead (*see* ECF No. 1 ¶¶ 50-51), does not exist because New Balance has no claim-related contacts with Texas. This case concerns athletic uniforms that never entered Texas. They were designed and ordered online by an *Arkansas* entity, manufactured by *Massachusetts*-based and *Massachusetts*-incorporated New Balance *in Nicaragua*, and then shipped by New Balance from Nicaragua directly to *Arkansas*. Instead, Plaintiff advances a theory that New Balance is subject to specific jurisdiction because the online orders for the "HOOPLIFE" uniforms at issue were alleged to have been processed by BSN Sports ("BSN"), a Texas-based entity with which New Balance contracts for order and payment processing. Because BSN merely processed the orders that make

up the basis for Plaintiff's claims against New Balance, its presence in the forum provides no basis for the Court to exercise jurisdiction over New Balance in Texas. This "payment processor" theory of jurisdiction has been repeatedly rejected by courts for obvious reason: "Accepting such an argument would subject millions of persons around the globe to personal jurisdiction in [the states where payment processors are located] and render the 'expressly aimed' prong of the *Calder* test essentially meaningless." *See St Andrews Links Ltd. v. Source & Design Int'l (UK) Ltd.*, No. 21-cv-06470-JST, 2022 U.S. Dist. LEXIS 191895, at *10 (N.D. Cal. Oct. 20, 2022) (granting motion to dismiss for lack of personal jurisdiction despite that defendants "used companies like [payment processer] PayPal . . . with headquarters in this judicial district" because use of such companies did not amount to express aiming at the forum); *see also Graco Minn. Inc. v. PF Brands, Inc.*, No. 18-cv-1690-WQH, 2019 U.S. Dist. LEXIS 66611, at *19-21 (S.D. Cal. Apr. 17, 2019) (dismissing complaint for lack of personal jurisdiction despite that "Defendants accomplish online commercial transactions using the services of eBay, PayPal, and Google, [which] are headquartered in California" because "connections of third-party websites or platforms used by Defendants do not demonstrate [forum] contacts attributable to Defendants").

Finally, as an alternative reason to dismiss the case, venue is also improper. As Plaintiff does not – and cannot – establish that personal jurisdiction is appropriate in this case, and because no substantial part of Plaintiff's claims occurred within the state, venue remains improper.

## I.    FACTUAL BACKGROUND

Plaintiff makes lengthy reference to New Balance retailers in Texas as well as other sporting good and apparel retail stores where New Balance products are sold. *See* ECF No. 27 at 14-15. But Plaintiff did not plead, and cannot allege, that the HOOPLIFE uniforms at issue were designed, offered, sold, or shipped from these – or any other Texas store. In fact, the HOOPLIFE uniforms at issue were *not* designed, offered, ordered, manufactured, shipped from, or shipped to

Texas. ECF No. 22, Ex. 4 Declaration of Lamont Morgan ("Morgan Decl.") ¶¶ 2-11. From design to delivery, they never entered the state.[2] *See id.* The existence of retail locations, or the sale of unrelated products in the state of Texas is not a basis for general personal jurisdiction, is unrelated to this claim, and is therefore not a basis for specific personal jurisdiction.

As set forth in the sworn affidavits of Lamont Morgan, the HOOPLIFE uniforms at issue were designed and ordered online, through New Balance's website, newbalanceteam.com. *See* ECF No. 22, Ex. 4, Morgan Decl. ¶ 3. Newbalanceteam.com is a website that allows users to design custom jerseys and other athletic team apparel. *Id.* The HOOPLIFE jerseys were designed by an Arkansas-based customer on the website. *Id.* After the user indicated the design was complete, the website generated a "Design Link," which is a URL containing information about the order needed to fulfill it. *Id.* ¶ 4. As is New Balance's practice, the user was then directed to submit the Design Link to BSN, a company with which New Balance contracts for payment processing. *Id.* ¶ 5. The customer was specifically directed to submit the Design Link through BSN's online website so that the customer could order with New Balance through BSN, and then did so. *Id.* ¶¶ 5-6. Crucially, BSN did not design the allegedly infringing athletic apparel, did not produce it, did not ship it, and did not advertise or sell it. *Id.* ¶¶ 8-10. BSN processed online payment and notified New Balance that payment was made, confirming the order. *Id.* ¶¶ 5-7. New

---

[2] While the court must "resolve in favor of the plaintiff any factual conflicts posed by . . . *affidavits*" when ruling on a motion under Rule 12(b)(2), *see, e.g., Aqua-Dyne Inc. v. Les Enters. Claude Chagnon Inc.*, No. 00-cv-20244, 2000 U.S. App. LEXIS 39111, at *7 (5th Cir. Nov. 3, 2000) (emphasis added), the Court should not credit a plaintiff's unsworn allegations over statements in a defendant's sworn affidavit. *Kuan Chen v. United States Sports Academy, Inc.*, 956 F.3d 45, 54 (1st Cir. 2020) (stressing that to establish personal jurisdiction "the plaintiff cannot rely solely on conclusory averments but must 'adduce evidence of specific facts.'")(citation omitted); *see also Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984) ("At no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.").

Balance then manufactured the HOOPLIFE uniforms in Nicaragua and shipped them directly from Nicaragua to the customer in Arkansas. *Id.* ¶¶ 8-9.

Finally, Plaintiff makes much of the fact that New Balance and BSN have a contractual relationship for the processing of payments. But such a relationship is irrelevant to whether New Balance is subject to personal jurisdiction. New Balance did not ship the HOOPLIFE uniforms to BSN. *See id.* ¶ 10. Nor did BSN ship the HOOPLIFE uniforms to the customer. *See id.* BSN also did not advertise or sell the HOOPLIFE uniforms. *See id.* Indeed, Plaintiff himself has previously alleged in his prior litigation brought before the District Court for the Western District of Texas that the HOOPLIFE uniforms at issue were manufactured and shipped by New Balance, not BSN. *See* ECF No. 22, Ex. 3 at 9-10 ("BSN Sports processes the order and accepts payment . . . then forwards the order to the Defendant ('New Balance') to be fully manufactured and customized (including brand names) by the Defendant ('New Balance'). Once complete, the Defendant ('New Balance') ships the order to the customer. . . . This is how the [allegedly] infringing 'Hooplife' apparel products mentioned in the claim were entered into commerce."). Plaintiff's repeated reference to BSN is merely an attempt to improperly establish personal jurisdiction over a foreign company based on its contractual relationships with a resident entity. As described below, Plaintiff's attempts are unavailing.

## II.   THE COURT LACKS PERSONAL JURISDICTION OVER NEW BALANCE

In its opening brief New Balance set forth why the Court could not properly exercise personal jurisdiction over it. *See* ECF No. 22 at 6-10. Since then, Plaintiff has attempted in his opposition to introduce additional, unpleaded, unsworn, and irrelevant assertions. Despite these improper allegations, it remains clear, on the actual facts underpinning this dispute, that the Court may not properly exercise jurisdiction over New Balance.

As Plaintiff has not established that New Balance's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State," there plainly is no basis for general jurisdiction. *Daimler*, 571 U.S. at 138-39.

### B.    New Balance is Not Subject to Specific Jurisdiction

Plaintiff's Complaint does not allege that New Balance is subject to specific jurisdiction. *See* ECF No. 1 ¶¶ 50-51. This was for good reason: New Balance has no claim-related contacts with the forum that could establish specific jurisdiction. *See* ECF No. 22 at 8-10, 13-17. Plaintiff cannot assert that the HOOPLIFE uniforms were designed in, ordered in, offered in, manufactured in, shipped from, or shipped to Texas. *See supra* Part I. They never entered Texas. *See id.* The sole alleged factual basis Plaintiff even suggests for specific jurisdiction is that BSN, an entity with which New Balance's contracts to process payments is based in Texas. Yet, as explained below, this indirect connection to the state does not suffice to establish specific jurisdiction.

Although he does so in the context of arguments directed to the question of venue, Plaintiff points to a "letter of intent" between non-party NXTPRO Sports and New Balance and BSN as one basis for his allegations that "a substantial part of the events gave rise to the Plaintiff's claims" occurred in Texas. *See* ECF No. 27 at 16-20. While even Plaintiff offers equivocations as to its veracity and relevance – admitting that the "letter of intent" "may not have been the final agreement between New Balance and 'BSN'" – it is clear from a review of that "letter" that nothing within it connects Plaintiff's claims against New Balance to Texas. Specifically, the "letter" does not suggest that any sales, manufacturing, production, or delivery was to happen in Texas, and in fact does not mention Texas at all. *Id.* Instead, the "letter of intent" merely indicates that NXTPRO Sports would refer basketball clubs and sports camp participants to buy athletic apparel from New Balance "through BSN." *Id.* at 18-20.

*Andrews Links Ltd.*, 2022 U.S. Dist. LEXIS 191895, at *8 (noting "Defendants sold an infringing shirt to a customer in California"); *Graco Minn. Inc.*, 2019 U.S. Dist. LEXIS 66611, at *14-15 (noting defendants' sales to California); *Noboa*, 2015 U.S. Dist. LEXIS 199603, at *2, *7 (individual on whose behalf plaintiffs brought suit and who entered into an agreement with defendant was a resident of the forum). Here New Balance *never* made HOOPLIFE uniforms in Texas, *never* sold or shipped the HOOPLIFE uniforms to anyone in Texas, and – as the accused infringing items were designed and commissioned by an Arkansas entity – *never* even *offered* to sell the HOOPLIFE uniforms to anyone in Texas. *See supra* Part I; ECF No. 27, Exs. A, B, C. The use of a payment and order processor that happens to be headquartered in Texas to bill customers outside of the state is clearly insufficient to ground specific jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."). Indeed, as BSN is a national company with offices throughout the United States, it is not even clear that the invoices cited by Plaintiff even originated from within Texas, making any connection between the alleged infringement and this forum even more tenuous. Plaintiff's theory of specific jurisdiction therefore also fails.

### III.    VENUE IS IMPROPER

Plaintiff has not and cannot rebut New Balance's position that venue is improper in the forum. None of the bases for proper venue set forth in 28 U.S.C. §§ 1391(b)(1)-(3) is satisfied. New Balance does not reside in the forum, *see supra* Part II.A, it is not subject to personal jurisdiction in the forum, *see supra* Part II, and no part of the events giving rise to Plaintiff's claims occurred in this district, much less a substantial part, *see supra* Part II.B.

While Plaintiff may dress it up it in multiple ways in his Opposition, Plaintiff makes only a single argument with regard to venue: that venue must be appropriate because BSN – an entity

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

STEVEN MAGEE,

              Plaintiff,

    v.

NEW BALANCE ATHLETICS, INC.,

              Defendant.

Case No. 5:23-cv-923-FB

## DECLARATION OF LAMONT MORGAN IN SUPPORT OF DEFENDANT NEW BALANCE ATHLETICS, INC.'S MOTION TO DISMISS

I, Lamont Morgan, submit this Declaration in Support of Defendant New Balance Athletics, Inc.'s ("New Balance") Reply in Further Support of its Motion to Dismiss. Under penalty of perjury, pursuant to 28 U.S.C. § 1746, I declare as follows:

1.    I am presently the National Sales Manager, Team Sales, at New Balance, a position I have held since at least 2018. I state the following facts based on my personal knowledge or review of relevant documents.

2.    I have personally reviewed the purchase order placed by Arkansas-based Hooplife Basketball Academy ("HLBA"), the entity referred to by Plaintiff as "the Arkansas entity," for the HOOPLIFE athletic uniforms at issue in this case.

3.    These HOOPLIFE uniforms were designed by and ordered by HLBA through New Balance's website newbalanceteam.com, which allows third parties to design custom team jerseys and uniforms.

4.    After HLBA finished designing its uniforms, newbalanceteam.com generated a "Design Link," which is a URL containing information about the order needed to fulfill it. Such

a Design Link is created and provided to a customer whenever a customer finishes designing apparel on the website.

5.      In accordance with New Balance's typical procedures, HLBA was directed to submit the Design Link to BSN Sports ("BSN"), a company with which New Balance contracts for order confirmation and payment processing, through BSN's website so that HLBA could place the order with New Balance through BSN.

6.      HLBA submitted the Design Link to BSN for processing.

7.      BSN confirmed HLBA's order.

8.      New Balance manufactured the HOOPLIFE uniforms in its Nicaragua factory.

9.      The HOOPLIFE uniforms were later shipped directly from New Balance's Nicaragua factory to HLBA in Little Rock, Arkansas.

10.      I understand that Plaintiff has discussed New Balance's relationship with BSN and has stated that there are occasions where BSN ships products to customers. While there are certain products that BSN ships to customers, the HOOPLIFE uniforms at issue were not such products. I understand that Plaintiff has acknowledged this in his briefing, and has stated that New Balance (and not BSN) manufactured and shipped the HOOPLIFE uniforms at issue. This characterization is accurate. To be clear, New Balance did not ship the HOOPLIFE uniforms to BSN. Nor did BSN ship the HOOPLIFE uniforms to HLBA. BSN also did not advertise or sell the HOOPLIFE uniforms.

11.      The HOOPLIFE uniforms were not designed, offered, ordered, manufactured, shipped from, or shipped to Texas.

12.      I declare under penalty of perjury that the foregoing is true and correct.

24. By the Defendant's own admission while attempting to dismiss the case for Lack of Personal Jurisdiction, New Balance implicated themselves in the current matter for Trademark Infringement in Violation of <u>15 U.S. C. § 1114</u> and Trademark Counterfeiting as defined by <u>15 U.S.C. §1117 (Recovery for violation of Rights).</u>

25. For the record, the Plaintiff never referred to the infringing "Hooplife" products in his complaint as "HOOPLIFE uniforms" in the Northern or Western District. By their own admission and for confirmation of likelihood of confusion as this is EXACTLY how customers in the basketball community interprets the infringing products (as "HOOPLIFE uniforms), it is the Defendant who repeatedly referred to the infringing products as "HOOPLIFE uniforms" in their court filings. Again, confirming that there is a likelihood of confusion with New Balance's infringing IDENTICAL use and the Plaintiff's registered mark for IDENTICAL goods.

26. It is a fact that the Plaintiff's registered trademark is "HOOPLIFE"

27. It is a fact that the Plaintiff's listed goods in his trademark registrations for "HOOPLIFE" are "Athletic Apparel, namely shirts, pants, jackets, footwear, hats, caps, athletic uniforms, athletic bags, backpacks, book bags, duffel bags, gym bags, sports bags and tote bags.". See Plaintiff's valid trademark registrations below for reference:



# United States of America

## United States Patent and Trademark Office

# HOOPLIFE

**Reg. No. 4,750,862**
**Registered June 9, 2015**

STEVEN MAGEE (UNITED STATES INDIVIDUAL)
8111 MAINLAND #104-403
SAN ANTONIO, TX 78240

**Int. Cl.: 25**

FOR: ATHLETIC APPAREL, NAMELY, SHIRTS, PANTS, JACKETS, FOOTWEAR, HATS AND CAPS, ATHLETIC UNIFORMS, IN CLASS 25 (U.S. CLS. 22 AND 39).

**TRADEMARK**

FIRST USE 1-1-1992; IN COMMERCE 2-24-1999.

**PRINCIPAL REGISTER**

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NO. 4,428,401.

SER. NO. 86-308,077, FILED 6-12-2014.

BERNICE MIDDLETON, EXAMINING ATTORNEY



Director of the United States
Patent and Trademark Office

23



# HOOPLIFE

**Reg. No. 5,693,167**

**Registered Mar. 05, 2019**

**Int. Cl.: 18**

**Trademark**

**Principal Register**

Steven Magee  (UNITED STATES INDIVIDUAL)
8111 Mainland
San Antonio, TEXAS 78240

CLASS 18: Athletic bags; Backpacks; Book bags; Duffel bags; Gym bags; Sports bags; Tote bags

FIRST USE 1-17-2016; IN COMMERCE 5-6-2017

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF U.S. REG. NO. 4428401, 4750862

SER. NO. 87-743,120, FILED 01-04-2018



Director of the United States
Patent and Trademark Office

28. New Balance's unauthorized use of the Plaintiff's mark is "HOOPLIFE".

29. Plaintiff's registered mark is "HOOPLIFE".

30. New Balance's unauthorized use of the "HOOPLIFE" mark is identical in spelling and pronunciation as Plaintiff's registered mark, "HOOPLIFE".

31. New Balance sold, manufactured and shipped products bearing the Plaintiff's "HOOPLIFE" mark. A mark that was not authentic. Meaning it was not the mark of the registered trademark owner (the Plaintiff). New Balance's "HOOPLIFE" mark was "spurious", "not genuine", a "counterfeit" of the Plaintiff's authentic and registered "HOOPLIFE" mark as clearly defined by <u>15 U.S.C. §1117 (Recovery for violation of Rights).</u>

32. Furthermore, New Balance used a "counterfeit" mark that was IDENTICAL to the Plaintiff's "HOOPLIFE" mark on IDENTICAL goods "athletic uniforms", listed in the Plaintiff's registered trademark for "HOOPLIFE". This is confirmed by New Balance's numerous references to the infringing products as "HOOPLIFE uniforms". A reference that was made a total of (19) times by the Defendant.

33. In his sworn declaration, Lamont Morgan even referred to the infringing products as "Hooplife athletic uniforms".

34. In their own filings, New Balance even referred to the infringing HOOPLIFE products as "athletic uniforms".

35. Again, "athletic uniforms" are IDENTICAL goods listed in the Plaintiff's trademark registration for "HOOPLIFE". The IDENTICAL mark used by the Defendant, New Balance.

36. Furthermore, not only did New Balance sale infringing "HOOPLIFE uniforms" through BSN. New Balance also sold a wide variety of products through their self-admitted "payment processor", BSN. The additional infringing products sold by New Balance through its "payment processor" were shirts, pants, shorts, jerseys, jackets, hoodies, athletic apparel, backpacks, gym bags, athletic bags and sports bags as shown in the below invoices from New Balance's "payment processor", BSN Sports as referenced below in IDENTICAL invoices from BSN Sports, where New Balance has already admitted to selling, manufacturing and shipping "HOOPLIFE uniforms" through BSN Sports (those invoices and corresponding photos are also listed below for reference, evidence and confirmation of the Defendants infringing activities. All infringing products were sold and shipped to the SAME customer(s) on all invoices from New Balance Athletics, Inc.'s "payment processor"; *See* invoices 920993380, 921106646, 921089932 and 921377296 below:

# PRODUCTS SOLD BY NEW BALANCE THROUGH BSN SPORTS



**BSN SPORTS**
THE HEART OF THE GAME™

**Invoice Number**
**920993380**
Due Date: 03/20/2023

Contact Us:
1-800-227-7404
www.bsnsports.com

*Make check payable to:*
**BSN SPORTS LLC**
P.O. Box 841393
Dallas, TX 75284-1393

**PO Number: HOOPLIFE BASKETBALL**
Order Number: 306563880
Terms: NTCC
Invoice Date: 03/20/2023

Customer #: 4817621
**Bill To:** HOOPLIFE BASKETBALL ACADEMY
NICK MAHAN
Attn: Bookkeeper
800 EXCHANGE AVE STE 202
CONWAY AR 72032-7836

**Ship To:** HOOPLIFE BASKETBALL ACADEMY
TY Ferguson
Attn: Ty Ferguson
40 RAHLING CIR
LITTLE ROCK AR 72223-9187

| Item Number | Item Description | Material | Color/Team/Size | Qty/ UOM | Unit Price | Extended Price |
|---|---|---|---|---|---|---|
| NSPCUSTOM | Away Transition Jersey | NSPCUSTOM | I need 30 total https://www.new | 30 EA | 48.75 | 1,462.50 |
| NSPCUSTOM | Transition Short Away | NSPCUSTOM | I need 30 Style https://www.new | 30 EA | 48.75 | 1,462.50 |
| NSPCUSTOM | Home Transition Jersey | NSPCUSTOM | I need 30 total https://www.new | 30 EA | 48.75 | 1,462.50 |
| NSPCUSTOM | Home Transition Short | NSPCUSTOM | I need 30 Style https://www.new | 30 EA | 48.75 | 1,462.50 |

**Thank you for your order. This invoice completes your purchase order.**
All BSN purchases have an extended 60-day return policy. You can return items up to 60 days after the date of shipment
For realtime order status and tracking information go to www.bsnsports.com

**IMPORTANT NOTE ABOUT OUR INVOICES**

We know smooth processing of our invoice is important to you. If you have any questions about this invoice, please call your Accounts Receivable Service Representative (800-227-7404). We will be happy to answer your questions. Please remember to include your invoice number on your payment remittance so we can properly apply your payment to your account. Enjoy the benefits of online access. To enroll online or pay as a guest, go to www.BSNBilling.com.

**Thank you for your business.**

**To better service your account, please include invoice numbers on your remittance**

Invoice # 920993380
Due Date: 03/20/2023

Customer #:4817621

| Merchandise Sub Total | Other | Freight | Sales Tax | Invoice Total | Payment/Credit Applied | Total Invoice Amount Due |
|---|---|---|---|---|---|---|
| $5,850.00 | $0.00 | $351.00 | $534.84 | $8,735.84 | $6,735.84- | $0.00 |

BSN SPORTS Terms and Conditions apply to all of your orders with us and our affiliates. At any time, these terms and conditions can be found at www.bsnsports.com/terms
Past due balances are subject to a finance charge of 1.6% per month or the highest rate permitted by applicable law, whichever is lower.
BSN SPORTS accepts payments by check, credit card, ACH or wire.
If you need a copy of an invoice, please call 1-800-227-7404.

**Page 1 of 1**

## PHOTOS OF "AWAY TRANSITION JERSEYS AND SHORTS" FROM
## INVOICE 920993380



## PHOTOS OF "AWAY TRANSITION JERSEYS AND SHORTS" FROM INVOICE 920993380



## PHOTOS OF "AWAY TRANSITION JERSEYS AND SHORTS" FROM INVOICE 920993380



## PHOTOS OF "AWAY TRANSITION JERSEYS AND SHORTS" FROM INVOICE 920993380





**PHOTOS OF "AWAY TRANSITION JERSEYS AND SHORTS" FROM
INVOICE 920993380**



# PRODUCTS SOLD BY NEW BALANCE THROUGH BSN SPORTS



**BSN SPORTS**
THE HEART OF THE GAME™

**Invoice Number**

**921106646**

Due Date: 03/28/2023

Contact Us:
1-800-227-7404
www.bsnsports.com

Make check payable to:
**BSN SPORTS LLC**
**P.O. Box 841393**
**Dallas, TX 75284-1393**

PO Number: HOOPLIFE
BASKETBALL
Order Number: 306563876
Terms: NTCC
Invoice Date: 03/28/2023

Customer #: 4817621
Bill To:   HOOPLIFE BASKETBALL ACADEMY
NICK MAHAN
Attn: Bookkeeper
800 EXCHANGE AVE STE 202
CONWAY AR 72032-7836

Ship To:   HOOPLIFE BASKETBALL ACADEMY
TY FERGUSON
Attn: Ty Ferguson
40 RAHLING CIR
LITTLE ROCK AR 72223-9187

| Item Number | Item Description | Material | Color/Team/Size | Qty/UOM | Unit Price | Extended Price |
|---|---|---|---|---|---|---|
| NSPCUSTOM | Away Transition Jersey | NSPCUSTOM | I need 60 total https://www.new | 60 EA | 48.75 | 2,925.00 |
| NSPCUSTOM | Transition Short Away | NSPCUSTOM | I need 60 KMS90 https://www.new | 60 EA | 48.75 | 2,925.00 |
| NSPCUSTOM | Home Transition Jersey | NSPCUSTOM | I need 60 total https://www.new | 60 EA | 48.75 | 2,925.00 |
| NSPCUSTOM | Home Transition Short | NSPCUSTOM | I need 60 KMT90 https://www.new | 60 EA | 48.75 | 2,925.00 |

**Thank you for your order. This invoice completes your purchase order.**

All BSN purchases have an extended 60-day return policy. You can return items up to 60 days after the date of shipment
For realtime order status and tracking information go to www.bensports.com

**IMPORTANT NOTE ABOUT OUR INVOICES**

We know smooth processing of our invoice is important to you. If you have any questions about this invoice, please call your Accounts Receivable Service Representative
(800-227-7404). We will be happy to answer your questions. Please remember to include our invoice number on your payment remittance so we can properly apply your
payment to your account. Enjoy the benefits of online access. To enroll online or pay as a guest, go to www.BSNBilling.com.

**Thank you for your business.**

**To better service your account, please include invoice numbers on your remittance**

Customer #:4817621

Invoice #  921106646
Due Date: 03/28/2023

| Merchandise Sub Total | Other | Freight | Sales Tax | Invoice Total | Payment/Credit Applied | Total Invoice Amount Due |
|---|---|---|---|---|---|---|
| $11,700.00 | $0.00 | $702.00 | $1,069.68 | $13,471.68 | $13,471.68 | $0.00 |

BSN SPORTS Terms and Conditions apply to all of your orders with us and our affiliates. At any time, these terms and conditions can be found at www.bsnsports.com/terms
Past due balances are subject to a finance charge of 1.5% per month or the highest rate permitted by applicable law, whichever is lower.
BSN SPORTS accepts payments by check, credit card, ACH or wire.
If you need a copy of an invoice, please call 1-800-227-7404.

Page 1  of  1

## AWAY TRANSITION JERSEYS AND AWAY TRANSITION SHORTS
## FROM INVOICE 921106646



## AWAY TRANSITION JERSEYS AND AWAY TRANSITION SHORTS
## FROM INVOICE 921106646



## AWAY TRANSITION JERSEYS AND AWAY TRANSITION SHORTS
## FROM INVOICE 921106646



## PRODUCTS SOLD BY NEW BALANCE THROUGH BSN SPORTS
## PAGE 1 OF 3



**BSN SPORTS**
THE HEART OF THE GAME.™

**Invoice Number**
**921089932**
Due Date: 03/27/2023

Contact Us:
1-800-227-7404
www.bsnsports.com

Make check payable to:
**BSN SPORTS LLC**
P.O. Box 841393
Dallas, TX 75284-1393

PO Number: HOOPLIFE
BASKETBALL
Order Number: 306590408
Terms: NT00
Invoice Date: 03/27/2023

Customer #: 4817621
Bill To: HOOPLIFE BASKETBALL ACADEMY
NICK MAHAN
Attn: Bookkeeper
800 EXCHANGE AVE STE 202
CONWAY AR 72032-7836

Ship To: HOOPLIFE BASKETBALL ACADEMY
TY Ferguson
Attn: Ty Ferguson
40 RAHLING CIR
LITTLE ROCK AR 72223-9187

| Item Number | Item Description | Material | Color/Team/Size | Qty/UOM | Unit Price | Extended Price |
|---|---|---|---|---|---|---|
| NBMT73706 | NB 3000 S/S Batting Jacket Gun Metal 2XL | NBMT73706GM2XL | Gun Metal 2XL | 3 EA | 39.99 | 119.97 |
| NBMT73706 | NB 3000 S/S Batting Jacket Gun Metal LG | NBMT73706GMLG | Gun Metal LRG | 5 EA | 39.99 | 199.95 |
| NBMT73706 | NB 3000 S/S Batting Jacket Gun Metal MD | NBMT73706GMMD | Gun Metal MED | 5 EA | 39.99 | 199.95 |
| NBMT73706 | NB 3000 S/S Batting Jacket Gun Metal XL | NBMT73706GMXL | Gun Metal XLG | 7 EA | 39.99 | 279.93 |
| NBMT73706 | NB 3000 S/S Batting Jacket Navy 2XL | NBMT73706NA2XL | Navy 2XL | 3 EA | 39.99 | 119.97 |
| NBMT73706 | NB 3000 S/S Batting Jacket Navy LG | NBMT73706NALG | Navy LRG | 5 EA | 39.99 | 199.95 |
| NBMT73706 | NB 3000 S/S Batting Jacket Navy MD | NBMT73706NAMD | Navy MED | 5 EA | 39.99 | 199.95 |
| NBMT73706 | NB 3000 S/S Batting Jacket Navy XL | NBMT73706NAXL | Navy XLG | 7 EA | 39.99 | 279.93 |
| NBKMJ9006 | Mens Travel Hoodie Navy MED | NBKMJ9006TNVMED | Navy MED | 35 EA | 45.99 | 1,609.65 |
| NBKMJ9006 | Mens Travel Hoodie Navy LRG | NBKMJ9006TNVLRG | Navy LRG | 30 EA | 45.99 | 1,379.70 |
| NBKMJ9006 | Mens Travel Hoodie Navy XLG | NBKMJ9006TNVXLG | Navy XLG | 15 EA | 45.99 | 689.85 |
| NBKMJ9006 | Mens Travel Hoodie Navy 2XL | NBKMJ9006TNV2XL | Navy 2XL | 5 EA | 45.99 | 229.95 |
| NBKMP9006 | Mens Travel Pant Navy MED | NBKMP9006TNVMED | Navy MED | 35 EA | 39.99 | 1,399.65 |
| NBKMP9006 | Mens Travel Pant Navy LRG | NBKMP9006TNVLRG | Navy LRG | 30 EA | 39.99 | 1,199.70 |
| NBKMP9006 | Mens Travel Pant Navy XLG | NBKMP9006TNVXLG | Navy XLG | 15 EA | 39.99 | 599.85 |
| NBKMP9006 | Mens Travel Pant Navy 2XL | NBKMP9006TNV2XL | Navy 2XL | 4 EA | 39.99 | 159.96 |
| NBKMP9006 | Mens Travel Pant Navy 3XL | NBKMP9006TNV3XL | Navy 3XL | 1 EA | 39.99 | 39.99 |

Page 1  of  3

37

# PRODUCTS SOLD BY NEW BALANCE THROUGH BSN SPORTS
## PAGE 2 OF 3



**Invoice Number**
**921089932**
Due Date: 03/27/2023

Contact Us:
1-800-227-7404
www.bsnsports.com

**BSN SPORTS**
THE HEART OF THE GAME

Make check payable to:
**BSN SPORTS LLC**
P.O. Box 841393
Dallas, TX 75284-1393

**PO Number: HOOPLIFE BASKETBALL**
Order Number: 306590408
Terms: NT00
Invoice Date: 03/27/2023

Customer #:  4817621
Bill To:  HOOPLIFE BASKETBALL ACADEMY
NICK MAHAN
Attn: Bookkeeper
800 EXCHANGE AVE STE 202
CONWAY AR 72032-7836

Ship To:  HOOPLIFE BASKETBALL ACADEMY
TY Ferguson
Attn: Ty Ferguson
40 RAHLING CIR
LITTLE ROCK AR 72223-9187

| Item Number | Item Description | Material | Color/Team/Size | Qty/ UOM | Unit Price | Extended Price |
|---|---|---|---|---|---|---|
| NBKWJ9006 | Wms Travel Hoodle Navy SML | NBKWJ9006TNVSML | Navy SML | 6 EA | 45.99 | 275.94 |
| NBKWJ9006 | Wms Travel Hoodle Navy MED | NBKWJ9006TNVMED | Navy MED | 12 EA | 45.99 | 551.88 |
| NBKWJ9006 | Wms Travel Hoodle Navy LRG | NBKWJ9006TNVLRG | Navy LRG | 10 EA | 45.99 | 459.90 |
| NBKWJ9006 | Wms Travel Hoodle Navy XLG | NBKWJ9006TNVXLG | Navy XLG | 3 EA | 45.99 | 137.97 |
| NBKWP9006 | Wms Travel Pant Navy SML | NBKWP9006TNVSML | Navy SML | 6 EA | 39.99 | 239.94 |
| NBKWP9006 | Wms Travel Pant Navy MED | NBKWP9006TNVMED | Navy MED | 12 EA | 39.99 | 479.88 |
| NBKWP9006 | Wms Travel Pant Navy LRG | NBKWP9006TNVLRG | Navy LRG | 10 EA | 39.99 | 399.90 |
| NBKWP9006 | Wms Travel Pant Navy XLG | NBKWP9006TNVXLG | Navy XLG | 3 EA | 39.99 | 119.97 |
| NBTMMT500 | SS Tech Tee Navy LRG | NBTMMT500TNVLRG | Navy LRG | 40 EA | 16.25 | 650.00 |
| NBTMMT500 | SS Tech Tee Navy MED | NBTMMT500TNVMED | Navy MED | 55 EA | 16.25 | 893.75 |
| NBTMMT500 | SS Tech Tee Navy XLG | NBTMMT500TNVXLG | Navy XLG | 20 EA | 16.25 | 325.00 |
| NBTMMT500 | SS Tech Tee Navy XXL | NBTMMT500TNVXXL | Navy XXL | 5 EA | 16.25 | 81.25 |
| NBTMMT501 | LS Tech Tee Team Red LRG | NBTMMT501TRELRG | Red LRG | 40 EA | 19.50 | 780.00 |
| NBTMMT501 | LS Tech Tee Team Red MED | NBTMMT501TREMED | Red MED | 55 EA | 19.50 | 1,072.50 |
| NBTMMT501 | LS Tech Tee Team Red XLG | NBTMMT501TREXLG | Red XLG | 20 EA | 19.50 | 390.00 |
| NBTMMT501 | LS Tech Tee Team Red XXL | NBTMMT501TREXXL | Red XXL | 5 EA | 19.50 | 97.50 |
| NSLAB13506 | TEAM SCHOOL BACKPACK RED | NSLAB13506TREOSM | Red OSFA | 125 EA | 32.50 | 4,062.50 |

Page 2  of  3

## PRODUCTS SOLD BY NEW BALANCE THROUGH BSN SPORTS
## PAGE 3 OF 3



**BSN SPORTS**
THE HEART OF THE GAME.

**Invoice Number**

**921089932**
Due Date: 03/27/2023

Contact Us:
1-800-227-7404
www.bsnsports.com

Make check payable to:
**BSN SPORTS LLC**
P.O. Box 841393
Dallas, TX 75284-1393

PO Number: HOOPLIFE
BASKETBALL
Order Number: 306590408
Terms: NT00
Invoice Date: 03/27/2023

Customer #: 4817621
Bill To: HOOPLIFE BASKETBALL ACADEMY
NICK MAHAN
Attn: Bookkeeper
800 EXCHANGE AVE STE 202
CONWAY AR 72032-7836

Ship To: HOOPLIFE BASKETBALL ACADEMY
TY Ferguson
Attn: Ty Ferguson
40 RAHLING CIR
LITTLE ROCK AR 72223-9187

| Item Number | Item Description | Material | Color/Team/Size | Qty/UOM | Unit Price | Extended Price |
|---|---|---|---|---|---|---|
| LETTERWOE | LWO External Decoration | LETTERWOE | | 156 EA | 6.00 | 936.00 |
| LETTERWOE | LWO External Decoration | LETTERWOE | | 240 EA | 3.25 | 780.00 |
| LETTERWOE | LWO External Decoration | LETTERWOE | | 125 EA | 6.00 | 750.00 |

**Thank you for your order. This invoice completes your purchase order.**
All BSN purchases have an extended 90-day return policy. You can return items up to 90 days after the date of shipment
For realtime order status and tracking information go to www.bsnsports.com

**IMPORTANT NOTE ABOUT OUR INVOICES**

We know smooth processing of our invoice is important to you. If you have any questions about this invoice, please call your Accounts Receivable Service Representative (800-227-7404). We will be happy to answer your questions. Please remember to include our invoice number on your payment remittance so we can properly apply your payment to your account. Enjoy the benefits of online access. To enroll online or pay as a guest, go to www.BSNBilling.com.

Thank you for your business.

**To better service your account, please include invoice numbers on your remittance**

Invoice # 921089932
Due Date: 03/27/2023

Customer #:4817621

| Merchandise Sub Total | Other | Freight | Sales Tax | Invoice Total | Payment/Credit Applied | Total Invoice Amount Due |
|---|---|---|---|---|---|---|
| $22,391.78 | $0.00 | $1,346.25 | $2,047.42 | $25,785.45 | $25,785.45- | $0.00 |

BSN SPORTS Terms and Conditions apply to all of your orders with us and our affiliates. At any time, these terms and conditions can be found at www.bsnsports.com/terms
Past due balances are subject to a finance charge of 1.5% per month or the highest rate permitted by applicable law, whichever is lower.
BSN SPORTS accepts payments by check, credit card, ACH or wire.
If you need a copy of an invoice, please call 1-800-227-7404.

**Page 3 of 3**

## BATTING JACKET GUN METAL FROM INVOICE 921089932



**BATTING JACKET GUN METAL FROM INVOICE 921089932**



**BATTING JACKET GUN METAL FROM INVOICE 921089932**



**BATTING JACKET GUN METAL FROM INVOICE 921089932**





# NB 3000 S/S BATTING JACKET

SKU# NBMT73706    NAVY

✓ In Stock    Ships FedEx

> be the first to review this product



SML    MED    LRG

$65.00 each

Add To Cart

* Required Fields

+ Wishlist    + Compare    Print    Email

**Key Benefits:**

– Short Sleeve Performance Batting Jacket

DETAILS    ADDITIONAL INFORMATION    WARRANTY    REVIEWS    TAGS

Contact Us

## BATTING JACKET GUN METAL FROM INVOICE 921089932



**NAVY TRAVEL HOODIE FROM INVOICE 921089932**



## NAVY TRAVEL HOODIE FROM INVOICE 921089932



## NAVY TRAVEL HOODIE FROM INVOICE 921089932



## NAVY TRAVEL HOODIE AND NAVY TRAVEL PANTS
## FROM INVOICE 921089932



## PRE-DECORATED LS (Long Sleeve) and SS (Short Sleeve) TECH TEES FROM INVOICE 921089932





## SS (Short Sleeve) TECH TEES FROM INVOICE 921089932



**SS (Short Sleeve) TECH TEES FROM INVOICE 921089932**



**SS (Short Sleeve) TECH TEES FROM INVOICE 921089932**



**SS (Short Sleeve) TECH TEES FROM INVOICE 921089932**



**LS (Long Sleeve) TECH TEES FROM INVOICE 921089932**



**LS (Long Sleeve) TECH TEES FROM INVOICE 921089932**



## PRE- "DECORATED" - TEAM SCHOOL BACKPACK FROM INVOICE 921089932



## TEAM SCHOOL BACKPACK FROM INVOICE 921089932



# PRODUCTS SOLD BY NEW BALANCE THROUGH BSN SPORTS



**Invoice Number**
**921377296**
Due Date: 04/17/2023

**BSN SPORTS**
THE HEART OF THE GAME™

Contact Us:
1-800-227-7404
www.bsnsports.com

Make check payable to:
**BSN SPORTS LLC**
P.O. Box 841393
Dallas, TX 75284-1393

**PO Number: HOOPLIFE BASKETBALL**
Order Number: 306635742
Terms: NTCC
Invoice Date: 04/17/2023

Customer #: 4817621
**Bill To:** HOOPLIFE BASKETBALL ACADEMY
NICK MAHAN
Attn: Bookkeeper
800 EXCHANGE AVE STE 202
CONWAY AR  72032-7838

**Ship To:** HOOPLIFE BASKETBALL ACADEMY
TY Ferguson
Attn: Ty Ferguson
40 RAHLING CIR
LITTLE ROCK AR  72223-9187

| Item Number | Item Description | Material | Color/Team/Size | Qty/UOM | Unit Price | Extended Price |
|---|---|---|---|---|---|---|
| LETTERWOE | LWO External Decoration | LETTERWOE | | 20 EA | 6.25 | 125.00 |
| NBMT93714 | BP Fleece Hoodie Short Slv Black MED | NBMT93714BKM | Black MED | 5 EA | 49.99 | 249.95 |
| NBMT93714 | BP Fleece Hoodie Short Slv Black LRG | NBMT93714BKL | Black LRG | 5 EA | 49.99 | 249.95 |
| NBMT93714 | BP Fleece Hoodie Short Slv Black XLG | NBMT93714BKXL | Black XLG | 7 EA  * | 49.99 | 349.93 |
| NBMT93714 | BP Fleece Hoodie Short Slv Black 2XL | NBMT93714BK2XL | Black 2XL | 3 EA | 49.99 | 149.97 |

**Thank you for your order. This invoice completes your purchase order.**
All BSN purchases have an extended 60-day return policy. You can return items up to 60 days after the date of shipment
For realtime order status and tracking information go to www.bsnsports.com

**IMPORTANT NOTE ABOUT OUR INVOICES**

We know smooth processing of our invoice is important to you. If you have any questions about this invoice, please call your Accounts Receivable Service Representative (800-227-7404). We will be happy to answer your questions. Please remember to include our invoice number on your payment remittance so we can properly apply your payment to your account. Enjoy the benefits of online access. To enroll online or pay as a guest, go to www.BSNBilling.com.

Thank you for your business.

**To better service your account, please include invoice numbers on your remittance**

Invoice # 921377296
Due Date: 04/17/2023

Customer #:4817621

| Merchandise Sub Total | Other | Freight | Sales Tax | Invoice Total | Payment/Credit Applied | Total Invoice Amount Due |
|---|---|---|---|---|---|---|
| $1,124.80 | $0.00 | $44.43 | $100.85 | $1,270.08 | $1,270.08- | $0.00 |

BSN SPORTS Terms and Conditions apply to all of your orders with us and our affiliates. At any time, these terms and conditions can be found at www.bsnsports.com/terms
Past due balances are subject to a finance charge of 1.5% per month or the highest rate permitted by applicable law, whichever is lower.
BSN SPORTS accepts payments by check, credit card, ACH or wire.
If you need a copy of an invoice, please call 1-800-227-7404.

Page 1  of  1

## BP FLEECE HOODIE SHORT SLV BLACK
## FROM INVOICE 921377296



## BP FLEECE HOODIE SHORT SLV BLACK
## FROM INVOICE 921377296



## PRE-DECORATED BP FLEECE HOODIE SHORT SLV BLACK
## FROM INVOICE 921377296



37. Plaintiff manufactures and sells "HOOPLIFE" uniforms under the

genuine and authentic "HOOPLIFE" mark as shown below:









38. As referenced in the above invoices from New Balance's "payment

    processor", BSN Sports, New Balance WILLFULLY sold approx. 901

    products bearing the Plaintiff's "HOOPLIFE" mark consisting of

    athletic uniforms, athletic apparel, shirts, pants, jackets, athletic bags,

    backpacks, book bags, gym bags and sports bags. All of which are

    IDENTICAL goods listed in the Plaintiff's trademark registration for

the IDENTICAL "HOOPLIFE" mark used by the Defendant, New Balance for Trademark Infringement in Violation of <u>15 U.S. C. § 1114</u> and Trademark Counterfeiting as defined by <u>15 U.S.C. §1117 (Recovery for violation of Rights).</u>

39. New Balance's infringing activity occurred after Plaintiff had already notified internal counsel for New Balance Athletics, Inc. about his trademark rights to the "Hooplife" mark.

40. In the email to New Balance sent on February 9, 2022, the Plaintiff explained that he was aware of the "HLBA" customers posting on their social media that they were partnering with New Balance to have New Balance manufacture apparel products for the Arkansas customer. Plaintiff even provided the name of the specific customers who may be seeking to purchase the infringing apparel products to be sold, manufactured and shipped by the Defendant. Plaintiff noted the following in his email to New Balance:

*"This email is to simply let you (New Balance) know that New Balance does not have my authorization to supply apparel in any form to/for "HLBA Sports" (located in Arkansas) that bear or may later bear the "Hooplife" brand name..."*

65

> *"If the "HLBA" Sport - New Balance "partnership" is legit and*
> *New Balance would like to enter into a licensing agreement to produce*
> *apparel bearing the Hooplife® name, please reach out to me to discuss*
> *licensing options. "*

41. A Screenshot of the Plaintiff's email sent on February 9, 2022 at 11:42am to "Mariann Caplan", Amy Berman (was Senior Trademark Paralegal at New Balance from April 2020 – December 2022) and Alexandra Deneve (Senior Corporate Counsel, Trademark Brand Enforcement at New Balance from August 2021 – December 2022; currently Associate General Counsel, Trademarks and Brand Enforcement at New Balance with the company) shown below:

**Hello from Hooplife®** 

**The Hooplife® Brand**
To mariann.caplan@newbalan... · Wed, Feb 9, 2022 at 11:42 AM ✓

Good Morning New Balance,

My name is Steven Magee. Owner of Hooplife®.

It has come to our attention that New Balance has partnered with an entity out of Arkansas that goes by the name "HLBA SPORTS". Based on a recent Instagram post by @hlba_sports, New Balance has entered into a partnership with HLBA Sports and may be producing / manufacturing the uniforms / apparel / team apparel for HLBA Sports (See attached screenshot of the post announcing the HLBA Sports - New Balance partnership).

With that in mind and if it is a true partnership between New Balance and HLBA sports, we're contacting you to make you aware that neither New Balance or HLBA Sports are authorized to use the Hooplife® brand name on any of it's apparel / uniforms / team apparel.

I also want to advise you that we filed a lawsuit against "HLBA" Sports (lawsuit currently pending against "HLBA", Nike and others) for the unauthorized use of "Hooplife". It appears the HLBA Sports has severed their "partnership" with Nike due to the lawsuit.

This email is to simply let you (New Balance) know that New Balance does not have my authorization to supply apparel in any form to/for "HLBA Sports" (located in Arkansas) that bear or may later bear the "Hooplife" brand name... not even from a contributory perspective.

This email serves as documentation and will be used for legal purposes if necessary via a lawsuit that shows as of today February 9, 2022, New Balance knew and had reason to know that they were engaging in trademark infringement. If necessary, we will file a lawsuit against New Balance for willful trademark infringement for their unauthorized use of the Hooplife® brand name in connection with apparel.

If the "HLBA" Sport - New Balance "partnership" is legit and New Balance would like to enter into a licensing agreement to produce apparel bearing the Hooplife® name, please reach out to me to discuss licensing options. Otherwise, please provide the above information / this email to the necessary parties at New Balance (Apparel Department, Customized Uniform / Apparel Department, etc....) to not provide apparel to HLBA Sports that will bear the Hooplife® brand name.

Hooplife® is a basketball brand. We produce Hooplife® Apparel and New Balance is a competitor.

If you have any questions, please feel free to contact me.

Thank you,
Steven Magee
Hooplife®
The Hooplife® Brand

42. In blatant disregard of the Plaintiff's email notification to multiple legal representatives at New Balance Athletics, Inc., Plaintiff's trademark rights, and public notification of the Plaintiff's trademark registrations and ownership for the "Hooplife" mark via the USPTO.gov website, New Balance Athletics, Inc. WILLFULLY manufactured and sold products bearing the Plaintiff's "Hooplife" mark anyway starting as early as January 2023 as outlined in the invoice evidence from New Balance's self-admitted "payment processor", BSN Sports.

43. The "Hooplife uniforms" as referenced by name according to New Balance's own admission are included in the invoices, along with additional infringing products in subsequent invoices that constitute and entire order that was entered into commerce by New Balance Athletics, Inc. (the Defendant).

44. This is evident as ALL the infringing "HOOPLIFE" products (approx. 901 products) were billed and shipped to the same customer(s) in Arkansas as shown on each invoice and noted below for reference:

```
Customer #:  4817621
     Bill To:  HOOPLIFE BASKETBALL ACADEMY          Ship To:   HOOPLIFE BASKETBALL ACADEMY
               NICK MAHAN                                       TY Ferguson
               Attn: Bookkeeper                                 Attn: Ty Ferguson
               800 EXCHANGE AVE STE 202                         40 RAHLING CIR
               CONWAY AR 72032-7836                             LITTLE ROCK AR 72223-9187
```

45. All the infringing products were manufactured by New Balance Athletics, Inc. as all the infringing "HOOPLIFE" products prominently display the Defendants "NB" logo as clearly seen in the photo evidence.

46. New Balance Athletics, Inc. does not, did not and never has had authorization from the Plaintiff to use the "HOOPLIFE" mark. New Balance however does had emails (3 separate emails to New Balance legal representatives) specifically stating that the Defendant did NOT have authorization to use the Plaintiff's "HOOPLIFE" mark, making this case exceptional as New Balance Athletics' actions are willful.

## COUNT I: TRADEMARK INFRINGEMENT
## AGAINST NEW BALANCE ATHLETICS, INC.

47. Trademark Infringement against New Balance Athletics, Inc. in Violation of 15 U.S.C. § 1114.

48. New Balance Athletics, Inc. is a manufacturer and seller of apparel products for various of sports.

49. Like the Plaintiff, New Balance owns several trademark registrations in the International Class of 025 (clothing); apparel.

50. On February 9, 2022, the Plaintiff sent an email to legal representatives at New Balance Athletics, Inc., specifically <u>Amy Berman</u>, <u>Alexandra Deneve</u>, and Mariann Caplan (Mariann Caplan is a Senior Paralegal at New Balance).

51. Upon information and belief (via Linkedin.com), <u>Amy Berman</u> was Senior Trademark Paralegal at New Balance from April 2020 – December 2022 (employed at the time of Plaintiff's email).

52. Upon information and belief (via Linkedin.com), <u>Alexandra Deneve</u> is Trademark & Brand Enforcement Associate General Counsel at New Balance since August of 2021, and upon information and belief she is still employed at New Balance.

53. Upon information and belief (via Linkedin.com), <u>Mariann Caplan</u> is Senior Paralegal at New Balance since December of 2015 and upon information and belief she is still employed at New Balance.

54. In the email to New Balance, the Plaintiff explained that he was aware of customers posting on their social media that they were partnering with New Balance to have New Balance manufacture apparel products for the customer.

55. In blatant disregard of the Plaintiff's email, trademark rights, and public notification of the Plaintiff's trademark registrations and ownership for the "Hooplife" mark via the USPTO.gov website, New Balance proceeded to produce apparel bearing the Plaintiff's "Hooplife" mark.

56. Considering the foregoing, combined with the Plaintiff's direct email to alert legal representatives at New Balance prior to the infringement, New Balance knew or had reason to know that they would be and/or were engaging in trademark infringement.

57. In consideration of the foregoing Plaintiff products consists of jerseys, shorts, hoodies, shirts, i.e., athletic apparel, athletic uniforms bearing the "Hooplife" mark. There is a likelihood of confusion as marks are compared in their enteritis for similarities in appearance, sound, connotation, and commercial impression. Stone Lion Capital Partners,

LP v. Lion Capital LLP, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." In re Inn at St. John's, LLC, 126 USPQ2d 1742, 1746 (TTAB 2018) (citing In re Davia, 110 USPQ2d 1810, 1812 (TTAB 2014)), aff'd per curiam, 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); TMEP §1207.01(b). New Balance's infringing use of the "Asserted Mark" is "HOOPLIFE". The Plaintiff's registered mark is "HOOPLIFE". New Balance's use of "HOOPLIFE" (the spelling, sound, and connotation) are identical to the Plaintiff's for identical goods, namely athletic apparel, and athletic uniforms. When identifying the source of goods by name, the comparison is whether the marks are sufficiently similar in terms of their commercial impression such that [consumers] who encounter the marks would be likely to assume a connection between the parties." Cai v. Diamond Hong, Inc., 901 F.3d 1367, 1373, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting Coach Servs., Inc. v. Triumph Learning LLC, 668 F.3d 1356, 1368, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012)); TMEP §1207.01(b). The proper

71

focus is on the recollection of the average purchaser, who retains a general rather than specific impression of trademarks. In re Ox Paperboard, LLC, 2020 USPQ2d 10878, at *4 (TTAB 2020) (citing In re Bay State Brewing Co., 117 USPQ2d 1958, 1960 (TTAB 2016)); In re Inn at St. John's, LLC, 126 USPQ2d 1742, 1746 (TTAB 2018); TMEP §1207.01(b); see In re St. Helena Hosp., 774 F.3d 747, 750-51, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014). Marks need not be identical, only sufficiently like create a likelihood of confusion in the mind of the general purchaser.

58. The Plaintiff's use and New Balance's use of "HOOPLIFE" are spelled the same on athletic apparel goods.

59. There is a likelihood of confusion as the Plaintiff and New Balance's use of the "HOOPLIFE" mark are spelled and pronounced the same in connection with the same type of goods, namely athletic apparel.

60. As a direct and proximate result of New Balance's violation of 15 U.S. C. § 1114, the Plaintiff has been and will continue to be damaged.

61. New Balance's conduct is causing and will continue to cause the Plaintiff to suffer irreparable harm and, unless New Balance is restrained, the Plaintiff will continue to be so damaged, because it has no adequate remedy at law.

62. New Balance's conduct is willful and intentional, making this an exceptional case.

## COUNT II: TRADEMARK COUNTERFEITING AGAINST NEW BALANCE ATHLETICS, INC.

63. A recovery for a violation of rights 15 U.S.C. § 1117 against New Balance Athletics, Inc.

64. New Balance Athletics, Inc. used a counterfeit "HOOPLIFE" mark as defined by 15 U.S.C. §1117 (Recovery for violation of Rights). New Balance used a counterfeit "HOOPLIFE" mark that is IDENTICAL with, or substantially indistinguishable from, the Plaintiff's "HOOPLIFE" mark registered on the principal register in the United States Patent and Trademark Office and in use. New Balance's counterfeit mark is "HOOPLIFE". The Plaintiff's registered mark is "HOOPLIFE". New Balance's counterfeit mark is spelled the same as the genuine mark. New Balance also knew that the Plaintiff's "HOOPLIFE" mark is registered prior to their use of their counterfeit mark. New Balance even refers to the infringing products as "HOOPLIFE uniforms". This is IDENTICAL to the Plaintiff's goods (i.e., athletic uniforms; IDENTICALLY named "HOOPLIFE")

65. As defined by <u>15 U.S.C. §1117 (Recovery for violation of Rights)</u>, New Balance used in connection with and applied the counterfeit "HOOPLIFE" mark to identical goods ("athletic apparel, namely shirts, pants, jackets, athletic uniforms, athletic bags, backpacks, gym bags, sports bags"), for which the Plaintiff's "HOOPLIFE" mark is registered with the United States Patent and Trademark Office, which is likely to cause confusion.

66. As defined by <u>15 U.S.C. §1117 (Recovery for violation of Rights)</u>, New Balance used a "MARK" on and in connection with IDENTICAL goods that are registered with the United States Patent and Trademark Office ("athletic apparel, namely shirts, pants, jackets, athletic uniforms, athletic bags, backpacks, book bags, gym bags, sports bags"). A total of 9 types of goods that are listed in the Plaintiff's trademark registrations for the "Hooplife" mark.

67. According to <u>15 U.S.C. §1117 (Recovery for violation of Rights)</u> – In a case involving the use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services, the Plaintiff may elect to recover statutory damages for use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods and services in the amount of -

1.  not less than $1,000 or more than $200,000 per counterfeit

    MARK per type of goods or services sold, offered to sale,

    or distributed, as the court considers just; or

2.  if the court finds that the use of the counterfeit MARK was

    willful, not more than $2,000,000 per counterfeit MARK

    per type of goods or services sold, offered for sale, or

    distributed, as the court considers just.

68. There is a likelihood of confusion as the Defendants unauthorized use is

    "HOOPLIFE". The Plaintiff's registered trademark is "HOOPLIFE".

    The marks are IDENTICAL (pronounced and spelled the same).

69. There is a likelihood of confusion that customer(s) will presumably

    refers to the infringing products as "HOOPLIFE" products. This is clear

    in the FACT that New Balance themselves refers to the infringing

    products as "HOOPLIFE" uniforms.


## COUNT III: UNFAIR COMPETITION
## AGAINST NEW BALANCE ATHLETICS, INC.

70. Unfair Competition 15 U.S.C. § 45 against New Balance Athletics, Inc.

71. The 8th Circuit Court of Appeals addresses unfair competition primarily

    through Section 43(a) of the Lanham Act. According to the court's

    interpretation, unfair competition encompasses two main categories:

a. False Association Claims (Section 43(a)(1)(A)): These are acts that are "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association" between parties (BFKN).

b. False Advertising Claims (Section 43(a)(1)(B)): These involve misrepresentations about the nature, characteristics, qualities, or geographic origin of goods or services.

72. The 8th Circuit recognizes that the Lanham Act serves two objectives:

a. Protecting businesses from unfair competition

b. Protecting consumers from being deceived (Harvard Law Review)

73. Unfair Competition is a course of dealing which leads, or is likely to lead, the public into believing that the goods or services of one person are the goods or services of another.

74. Unfair competition is conduct by a market participant which gains or seeks to gain an advantage over its rivals through misleading, deceptive, dishonest, fraudulent, coercive, or unconscionable conduct in trade and/or commerce.

75. The idea of unfair competition is to provide protection to any trademark or distinguishing aspect of the business against a mock-up or a knock-off initiated by a rival that acts as a breach of restrictions of fairness in competition in the marketplace.

76. New Balance manufactured athletic apparel, namely shirts, pants, jackets, athletic uniforms, athletic bags, backpacks, book bags, gym bags, sports bags bearing the Plaintiff's "HOOPLIFE" mark.

77. New Balance has acted unfairly in a manner that is likely to cause confusion in the marketplace by using the Plaintiff's "Hooplife" mark on and in connection with the manufacturing, the sell and trafficking of goods identical to the goods listed on the Plaintiff's trademark registrations.

78. New Balance has acted unfairly in using a MARK that is IDENTICAL to the Plaintiff's registered "HOOPLIFE" mark to sell, manufacture and ship goods across interstate lines in commerce that are IDENTICAL goods to those goods listed on the Plaintiff's registered trademark.

79. New Balance's infringing activities and misconduct to use the Plaintiff's "HOOPLIFE" mark is likely to cause marketplace confusion or deception. (i.e., New Balance refers to the infringing goods as "HOOPLIFE uniforms", which is IDENTICAL to the Plaintiff's goods).

80. The Plaintiff has suffered harm due to New Balance's willful conduct in trade and/or commerce through their infringing activities.

## COUNT IV: FALSE DESIGNATION OF ORIGIN
## AGAINST NEW BALANCE ATHLETICS, INC. IN VIOLATION OF
## PLAINTIFF'S REGISTRATIONS (REG NO. 4750862, REG NO. 5693167)

81. False Designation of Origin 15 U.S.C. § 1125(a)

82. New Balance's unauthorized use of the Plaintiff's Asserted "HOOPLIFE" mark and/or confusingly similar mark constitutes a false designation of origin that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of New Balance's infringing "HOOPLIFE" apparel products by creating a false and misleading impression that the infringing "HOOPLIFE" apparel products are licensed from the Plaintiff, endorsed, sponsored or authorized by Plaintiff and are connected or affiliated in some way with the Plaintiff or the Plaintiff's Asserted Mark when in deed they are not.

83. There is a likelihood of confusion as New Balance's unauthorized use of the "HOOPLIFE" mark is confusingly similar to the Plaintiff's "HOOPLIFE" mark as the marks are spelled and pronounced the same for the same type of goods listed in the Plaintiff's trademark registrations.

78

## COUNT V: COMMON LAW TRADEMARK INFRINGEMENT
## AGAINST NEW BALANCE ATHLETICS, INC.

84. Common Law Trademark Infringement against New Balance Athletics, Inc.

85. New Balance's knowledge and blatant disregard of the Plaintiff's exclusive trademark rights manufactured products using the Plaintiff's "HOOPLIFE" mark and/or confusingly similar marks likely to cause confusion, mistake, deceive persons into the erroneous belief that the infringing "HOOPLIFE" apparel products that New Balance allowed to enter the stream of commerce were sponsored, licensed or authorized by the Plaintiff or were connected or affiliated in some way with the Plaintiff, the Plaintiff's "HOOPLIFE" mark or the Plaintiff's genuine, authentic Hooplife® goods and services.

86. New Balance's acts alleged herein and specifically, without limitation, New Balance's use, manufacture and sold products in the United States of America that were confusingly like products bearing the Plaintiff's "HOOPLIFE" mark, infringe the Plaintiff's trademark rights in violation of the common law.

87. There is a likelihood of confusion as New Balance's unauthorized use of the "HOOPLIFE" mark is confusingly similar to the Plaintiff's "HOOPLIFE" mark as the marks are spelled and pronounced the same

for the same type of goods listed in the Plaintiff's trademark

registrations.

## CONCLUSION

88. **Undisputable Facts that make this case exceptional:**

    a.  Plaintiff owns valid, incontestable trademark registrations (Reg. No. 4750862 and 5693167) for the "HOOPLIFE" mark in the United States of America.

    b.  Arkansas is in the United States of America.

    c.  Plaintiff and New Balance Athletics, Inc. are competitors as they both offer athletic apparel (i.e., athletic uniforms) available for sale via their respective websites in the United States of America.

    d.  To clearly avoid litigation, the Plaintiff notified New Balance Athletics, Inc. (3 separate internal legal representatives of New Balance Athletics, Inc.), of his rights to the "Hooplife" mark via email and referenced the Defendant's "HLBA". The Plaintiff even offered New Balance Athletics, Inc. the option to license the mark from the Plaintiff. The Plaintiff, furthermore, clearly stated that New Balance Athletics, Inc. does not have the Plaintiff's authorization to use the "Hooplife" mark.

e.  Plaintiff has sold and shipped products to customers in the United States Eastern District of Arkansas, specifically Cabot, and Little Rock, Arkansas as early as April 2022 from his website www.hooplifebrand.net, in competition with the Defendant.

f.  After receiving notification of the Plaintiff's rights to the "Hooplife' mark, New Balance Athletics, Inc. WILLFULLY began selling products bearing the Plaintiff's "HOOPLIFE" mark as early as January 2023 through BSN Sports (*See* BSN Sports invoices in ¶ 33).

g.  "BSN Sports" is referenced by the Defendant in court documents as the Defendant's "payment processor" for the infringing products (i.e., "HOOPLIFE uniforms").

h.  After notification from the Plaintiff, New Balance Athletics, Inc. sold approx. 900 separate products, in multiple transactions bearing the Plaintiff's "HOOPLIFE" mark to Arkansas customers in the Eastern District of Arkansas.

i.  The infringing "HOOPLIFE" products are identified in invoices from New Balance's referenced "payment processor", BSN Sports (*See* BSN Sports invoices in ¶ 33).

j.  The infringing "HOOPLIFE" products are also identified in photos that correspond to the invoices from New Balance Athletics, Inc.'s referenced "payment processor", BSN Sports.

k.  New Balance Athletics, Inc. admitted to selling, manufacturing and shipping infringing "HOOPLIFE" products.

l.  New Balance Athletics, Inc. self-admittedly referred to some of the infringing products as "HOOPLIFE uniforms".

m.  New Balance Athletics, Inc. sold a variety of product types through its "payment processor", BSN Sports that are IDENTICAL to the Plaintiff's goods listed in his trademark registrations for the "HOOPLIFE" mark.

n.  New Balance Athletics, Inc.'s use of the "HOOPLIFE" mark is spelled and pronounced the same as the Plaintiff's standard-character "HOOPLIFE" registered mark.

o.  New Balance Athletics, Inc. sold infringing "HOOOPLIFE" products without consent of the registrant (the Plaintiff).

p.  According to 15 U.S.C. §1117 (Recovery for violation of Rights) the Plaintiff is entitled to an award up to a max of $2,000,000 per counterfeit MARK per type of goods or services sold by New

Balance Athletics, Inc., offered for sale, or distributed, as the court considers just and as a matter of clearly documented law.

## **PRAYER FOR RELIEF**

89. A judgement against New Balance Athletics, Inc. for Trademark Infringement in Violation of <u>15 U.S. C. § 1114</u>.

90. A judgement of a Recovery for Violation of Rights <u>15 U.S.C. §1117</u> against New Balance Athletics, Inc.

91. A judgement against New Balance Athletics, Inc. for Unfair Competition <u>15 U.S.C. §45.</u>

92. A judgement against New Balance Athletics, Inc. False Designation of Origin <u>15 U.S.C. § 1125(a)</u>.

93. A judgement against New Balance Athletics, Inc. for Common Law Trademark Infringement.

94. A judgement that New Balance Athletics, Inc. WILLFULLY violated Plaintiff's trademark rights.

95. A judgement that New Balance Athletics, Inc. used a counterfeit "Hooplife" MARK as defined by <u>15 U.S.C. §1117</u> to sale of 9 types of goods for which Plaintiff's "Hooplife" MARK is registered.

96. An award of statutory damages in the amount of $2,000,000 per type of good sold by New Balance Athletics, Inc. as allowed by law <u>15 U.S.C. §1117 (Recovery for violation of Rights)</u> for the WILLFUL use of the counterfeit "HOOPLIFE" MARK on 9 types of goods: shirts, pants, jackets, athletic uniforms, athletic bags, backpacks, gym bags, sports bags, book bags.

97. The Plaintiff is entitled to up to $18,000,000 in statutory damages based on:

    a. Number of types of goods: 9

    b. Maximum statutory damages per type: $2,000,000

    c. Calculation: 9 × $2,000,000 = $18,000,000

    d. 9 types of goods represent a separate violation

    e. Each type qualifies for maximum statutory damages

    f. The statute allows counting each type separately

    g. Multiple products sold after awareness of rights

    h. Multiple IDENTICAL goods sold bearing mark

    i. Multiple WILLFUL transactions of infringement

    j. The exceptional nature of the case

    k. Clear willfulness of infringement

    l. Defendant's knowledge of Plaintiff's mark

    m. Defendant's size, sophistication, ability to not infringe

    n. Need for effective deterrence due to willful conduct

    o. The $18,000,000 maximum is legally justified under <u>15 U.S.C.</u> <u>§1117(c)(2)</u> per type of goods calculation.

    p. The amount would also serve as a much-needed deterrent for New Balance Athletics, Inc.'s potential future infringing activity.

    q. Reimbursement for cost of action

98. An award of treble damages due to Defendant's Willful infringement.

99. The Plaintiff would like to thank the honorable Court for its time in reviewing this complaint and attention to the detailed matters presented herein regarding New Balance Athletics, Inc. (the Defendant).

## **DEMAND FOR JURY TRIAL**

    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Steven Magee ("Plaintiff") demands a trial by jury for all issues triable.

*Signature*

Steven Magee

8407 Bandera Road #403

San Antonio, Texas 78250