**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

| | |
|---|---|
| STEVEN MAGEE,<br><br>Plaintiff,<br><br>v.<br><br>NEW BALANCE ATHLETICS, INC.,<br><br>Defendants. | Case No. 4:25-cv-00265-DPM |

# DEFENDANT NEW BALANCE'S MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS AND MOTION TO STRIKE

## TABLE OF CONTENTS

**PAGE**


**I. INTRODUCTION ........ 1**

**II. FACTUAL BACKGROUND ........ 2**

**III. LEGAL STANDARD ........ 3**

A. Dismissal Under Rule 12(b)(6) ........ 3

B. Striking Improper or Irrelevant Pleading Under Rule 12(f) ........ 5

**IV. ARGUMENT ........ 6**

A. The Complaint Fails to State a Claim for Counterfeiting ........ 6

1. Plaintiff's Cursory Allegations Do Not Establish a Claim of Counterfeiting ........ 8

2. Plaintiff's Own Pleadings Demonstrate That the Accused Infringing Products Are Not "Identical with, or Substantially Indistinguishable from" Plaintiff's Products ........ 10

3. Plaintiff's Own Pleadings Make It Clear that any use of the HOOPLIFE Trademark on the Accused Infringing Products Was Not "Spurious." ........ 14

B. Plaintiff's Prayer for Relief Improperly Calculates the Requested Statutory Damages Under 15 U.S.C. § 1114 ........ 16

**V. CONCLUSION ........ 18**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.M. Surgical, Inc. v. Akhtar*,
2016 WL 11543560 (E.D.N.Y. Apr. 19, 2016) ....................17

*Acosta v. Hovensa*,
53 V.I. 762 (D.V.I. 2010) ....................5, 17, 18

*Adams v. Grand Slam Club/Ovis*,
2013 WL 1444335 (D. Colo. Apr. 9, 2013) ....................8, 9

*Adidas Am., Inc. v. Aviator Nation, Inc.*,
2020 WL 9594397 (D. Or. Aug. 5, 2020) ....................8

*Arcona, Inc. v. Farmacy Beauty, LLC*,
2019 WL 1260625 (C.D. Cal. 2019) ....................14

*Ashanti v. City of Golden Valley*,
666 F.3d 1148 (8th Cir. 2012) ....................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................3, 4, 9

*Assoc. Gen. Contractors of Cal. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983) ....................4

*Audemars Piguet Holding S.A. v. Swiss Watch Intern., Inc.*,
2015 WL 150756 (S.D.N.Y. Jan. 12, 2015) ....................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................4, 9

*Bristol-Myers Squibb Co. v. IVAX Corp.*,
77 F. Supp. 2d 606 (D.N.J. 2000) ....................5

*Cohen & Co., Ltd. v. Cohen & Co. Inc.*,
2022 WL 5250271 (E.D. Pa. Oct. 6, 2022) ....................7, 15, 16

*Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp.*,
571 U.S. 277 (2014) ....................10

*DirecTV, Inc. v. Weikel*,
2005 WL 1243378 (D.N.J. May 25, 2005) ....................5

*Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli*,
575 F.3d 693 (7th Cir. 2009) ....................17

*Genter v. Allstate Prop. and Cas. Ins. Co.*,
2011 WL 2533075 (W.D. Pa. June 24, 2011)....................5, 17, 18

*GTFM, Inc. v. Solid Clothing Inc.*,
2002 WL 1933729 (S.D.N.Y. 2002)....................14

*Gucci Am., Inc. v. Guess?, Inc.*,
868 F. Supp. 2d 207 (S.D.N.Y. 2012) ....................6, 7

*Illinois Tool Works, Inc. v. J-B Weld Co., LLC*,
469 F. Supp. 3d 4 (D. Conn. 2020)....................7, 8, 15, 16

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
218 F.R.D. 76 (S.D.N.Y. 2003) ....................5

*Knowles v. TD Ameritrade Holding Corp.*,
2 F.4th 751 (8th Cir. 2021) ....................4

*Levy v. Ohl*,
477 F.3d 988 (8th Cir. 2007) ....................4

*Lontex Corp. v. Nike, Inc.*,
384 F. Supp. 3d 546 (E.D. Pa. 2019)....................6, 10, 11, 15, 16

*Lontex Corp. v. Nike, Inc.*,
107 F.4th 139 (3d Cir. 2024) ....................11

*Mattes v. ABC Plastics, Inc.*,
323 F.3d 695 (8th Cir. 2003) ....................4

*My Pillow, Inc. v. LMP Worldwide, Inc.*,
331 F. Supp. 3d 920 (D. Minn. 2018)....................4

*New Balance Athletics, Inc. v. USA New Bunren International Co. Limited LLC*,
2020 WL 5593932 (D. Del. 2020)....................17

*One Hanover, LLC v. Witkoff Group LLC*,
2023 WL 3304026 (S.D.N.Y. May 8, 2023) ....................10, 14

*Pet Quarters, Inc. v. Depository Tr. and Clearing Corp.*,
559 F.3d 772 (8th Cir. 2009) ....................4

*Playvision Labs, Inc. v. Nintendo of Am., Inc.*,
2015 WL 12941892 (N.D. Cal. May 18, 2015)....................8

*Randle v. City of Minneapolis Police Dep't*,
2007 WL 2580568 (D. Minn. Sept. 5, 2007) .....5

*Schneider Natl. Carriers, Inc. v. Raptor Auto Transport, Inc.*,
2023 WL 4685376 (N.D. Ohio July 21, 2023) .....7, 10

*Smith v. Giant Eagle, Inc.*,
2011 WL 1706520 (W.D. Pa. May 4, 2011) .....5

*Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*,
908 F.3d 313 (8th Cir. 2018) .....6, 7, 14

**Statutes**

15 U.S.C. § 1114 ..... 16-18

15 U.S.C. § 1117 .....16, 17

15 U.S.C. § 1127 .....6

**Other Authorities**

Rule 8(a)(2) .....3

Rule 12(d) .....4

Rule 12(f) ..... *passim*

Rule 12(b)(6) ..... *passim*

Rule 15(a)(2) .....3

Defendant New Balance Athletics, Inc. ("New Balance") respectfully submits this memorandum of law in support of its partial Motion to Dismiss Claim II of Plaintiff Steven Magee's ("Plaintiff") Complaint. For the reasons set forth below, New Balance moves this Court to dismiss Claim II of the Complaint, which asserts a claim for trademark counterfeiting under the Lanham Act, for a failure to state a claim, or, in the alternative, to strike Paragraphs 95-97 of Plaintiff's Prayer for Relief.

## I. INTRODUCTION

Plaintiff claims that New Balance's production of jerseys and other athletic supplies for third-party customer Hooplife Basketball Academy constitutes Counterfeiting under 15 U.S.C. § 1117(a). Not only are Plaintiff's counterfeiting assertions threadbare recitations of the legal elements of such a claim, unsupported by any actual factual allegations, but Plaintiff's counterfeiting claim is in fact belied by the few factual allegations the Complaint does provide.

Plaintiff's claims of counterfeiting fail as a matter of law. The facts as pleaded show that the apparel designed by Hooplife Basketball Academy and manufactured by New Balance ("the accused infringing products") were not nearly close enough to the trademarks and products offered by Plaintiff to state a plausible claim for counterfeiting. The Complaint also shows that because the accused infringing items were only made for and sold to the entity that designed them – Hooplife Basketball Academy – Plaintiff has not alleged that a reasonable consumer would be deceived into believing that the accused infringing products produced by New Balance were in fact made by Plaintiff.

Because as a matter of law the facts alleged in the complaint negate any claim of counterfeiting, Plaintiff's counterfeiting claim as set forth in Claim II of the complaint should be dismissed with prejudice.

Additionally, it is evident that Plaintiff's demand for statutory damages is based on a misunderstanding of how statutory damages are to be calculated. Contrary to Plaintiff's allegation that because its trademark registrations are directed to "9 types of goods," it is entitled to nine separate calculations of counterfeiting damages. Plaintiff's own pleadings assert that far fewer types of purported counterfeit goods were allegedly offered by New Balance. Because portions of the for relief are based on this fundamental error concerning how statutory damages are to be calculated, New Balance respectfully requests that such sections – specifically Paragraphs 95-97 – be stricken pursuant to Rule 12(f).

## II. FACTUAL BACKGROUND[1]

The Complaint contains almost no factual allegations directed to New Balance's alleged counterfeiting of Plaintiff's sporting apparel products. Instead, the Complaint contains serial recitations of the elements of various trademark claims under the Lanham Act and state law, and multiple pages of images of the two parties' products. Yet even through those threadbare pleadings, Plaintiff makes it clear that New Balance did not engage in counterfeiting.

New Balance is a world-renowned producer of shoes and athletic apparel. As part of those offerings, New Balance offers a service by which users can customize apparel they order by adding team specific logos and names, which are then added by New Balance. Importantly, unlike some other print-to-order services, New Balance did not sell these user designed items to third parties but instead provided all of the customized products solely to the entity that designed the garments. Dkt. No. 1 ¶¶ 21. 44

[1] The factual background is based on allegations of the Complaint, which are accepted as true for purposes of this motion only. New Balance does not concede the accuracy or completeness of any of the facts alleged in the Complaint.

Here, as Plaintiff's own Complaint asserts, an Arkansas entity named the Hooplife Basketball Academy ordered basketball apparel from New Balance. Dkt. No. 1, ¶¶ 20-21; *id.* at 15-17. As part of that order, the Hooplife Basketball Academy customized certain uniforms, shirts, and jackets to include their own "Hooplife" logos and branding. *Id.* As shown in the Complaint, the logos and branding that appear on these customized items are visually distinct from any branding or logos that appear on any products that Plaintiff alleges it offers. *Id.* at 28-64. Specifically, not only do the Hooplife Basketball Academy products use different fonts and colors from those used by Plaintiff, but each party's garments display unique and conspicuous house marks and logos which are clearly visually distinct. *Id.*; Hooplife Basketball Academy designed, bought and received every item accused in the Complaint. Dkt. No. 1, ¶¶ 20-21; *id.* at 15-17.

As evidenced by the Complaint, the accused infringing products do not display "spurious mark[s]" that are "identical" or "substantially indistinguishable" trademarks to those found on Plaintiff's own offerings. Dkt. No. 1, ¶¶ 28-64. Instead, they are different and distinguishable on their face. And based on Plaintiff's own pleadings, as the sole designer and purchaser of the accused infringing products, the only potential consumer of those products could not be confused into believing that the accused infringing products were in fact provided by Plaintiff. The facts alleged in Plaintiff's Complaint establish that New Balance has not engaged in counterfeiting under the Lanham Act, and the Court should therefore dismiss Count II with prejudice.

## III. LEGAL STANDARD

### A. Dismissal Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff must plead factual content that allows the court to draw

reasonable inferences that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a court is to accept all plausible factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party, legal conclusions that are couched as factual allegations must be disregarded. *See Iqbal*, 556 U.S. at 678-79; *My Pillow, Inc. v. LMP Worldwide, Inc.*, 331 F. Supp. 3d 920, 930 (D. Minn. 2018). The complaint, therefore, must contain more than labels, conclusions, or a formulaic recitation of the elements of a cause of action to survive a motion to dismiss. *See Twombly*, 550 U.S. at 555. Courts must not assume that a plaintiff can prove facts beyond those alleged in the complaint. *See Assoc. Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

The court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). The court may, however, consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings, *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n. 4 (8th Cir. 2003), and may also consider public records, *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007). "Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1150–51 (8th Cir. 2012) (citations omitted).

Finally, while the Federal Rules provide that a court "should freely give leave" to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), "[i]t is well settled that a district court may dismiss a complaint with prejudice under Rule 12(b)(6) when amendment of a complaint would

be futile." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 758 (8th Cir. 2021); *see also Pet Quarters, Inc. v. Depository Tr. and Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009). Instances where a plaintiff's own pleadings negate the elements of a claim are textbook examples of a situation where further amendment would be futile. *See Randle v. City of Minneapolis Police Dep't*, No. CIV 06-859 PAM/RLE, 2007 WL 2580568, at *2 (D. Minn. Sept. 5, 2007) (dismissing plaintiff's amended complaint because plaintiff failed to establish proof as to the requisite elements of that claim).

**B. Striking Improper or Irrelevant Pleading Under Rule 12(f)**

Under Fed. R. Civ. P. 12(f), "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters," *DirecTV, Inc. v. Weikel*, No. CIV. 03-5300 (JBS), 2005 WL 1243378, at *2 (D.N.J. May 25, 2005), and "to save time and expense through the excision of matter from the pleadings that will not affect the outcome of the case." *Bristol-Myers Squibb Co. v. IVAX Corp.,* 77 F. Supp. 2d 606, 619 (D.N.J. 2000); *see also Smith v. Giant Eagle, Inc.*, No. 2:10-CV-01644, 2011 WL 1706520, at *4 (W.D. Pa. May 4, 2011).

Fed. R. Civ. P. 12(f) "is not only the appropriate remedy for the striking of any redundant, immaterial, impertinent, or scandalous matter," but "also is designed to reinforce the requirement in Fed. R. Civ. P. 8(e) that pleadings be simple, concise, and direct." *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 218 F.R.D. 76, *79 (S.D.N.Y. 2003).

"Rule 12(f) is the procedural vehicle used to strike the Prayer for Relief where such damages are not recoverable as a matter of law." *Acosta v. Hovensa, LLC*, 53 V.I. 762, at *9 (D.V.I. 2010); *Genter v. Allstate Prop. and Cas. Ins. Co.*, No. 11CV0709, 2011 WL 2533075, at *2 (W.D. Pa. June 24, 2011) (citing *Seippel v. Jenkens & Gilchrist, P.C.,* 341 F. Supp. 2d 363,

383(S.D.N.Y. 2004)) ("A demand for damages that are not recoverable as a matter of law may be stricken pursuant to Rule 12(f)").

## IV. ARGUMENT

### A. The Complaint Fails to State a Claim for Counterfeiting

Plaintiff repeatedly indicates in his Complaint that because (1) New Balance allegedly manufactured customized apparel for Hooplife Basketball Academy, which requested that the items bear the purported HOOPLIFE trademark, and (2) the allegedly infringing products are purportedly within the class of items listed in Plaintiff's asserted trademark registrations, that is enough to establish a claim of counterfeiting. Plaintiff is wrong.

Pursuant to the Lanham Act, a "counterfeit" is a product bearing "a *spurious* mark which is *identical* with, or *substantially indistinguishable* from, a registered mark" that is the same as products sold by a claimant. 15 U.S.C. § 1127 (emphasis added); *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 340 (8th Cir. 2018); *Lontex Corp. v. Nike, Inc.*, 384 F. Supp. 3d 546, 554-55 (E.D. Pa. 2019), *aff'd,* 107 F.4th 139 (3d Cir. 2024). The act of counterfeiting therefore "is the act of producing or selling a product with a *sham trademark* that is an *intentional and calculated reproduction of the genuine trademark*." 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25:10 (5th ed. 2025) (emphasis added).

Because counterfeiting "is the 'hard core' or 'first degree' of trademark infringement," courts regularly limit counterfeiting claims to instances where the accused infringing products are stitch-for-stitch copies of those of another brand. *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012) (concluding that "Gucci's counterfeiting claim is more appropriately addressed under traditional infringement principles"). As the Eighth Circuit has explained, "[a] counterfeit is . . . far more similar to the registered mark than a mark that barely infringes it, and so an infringing mark is not necessarily also a counterfeit." *Sturgis*, 908 F.3d at

340; *see also* 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25:15.50 (5th ed.) ("The test of 'identical with, or substantially indistinguishable from' requires a much closer degree of similarity than is required for traditional infringement of a registered trademark.") (collecting cases).

This higher standard recognizes that counterfeiting is not merely trademark infringement under a different name, but represents an instance where a defendant is accused of creating and selling a fake product that consumers are tricked into buying ***because they believe it is*** the product of the registered trademark owner, not just a product connected to or sponsored by the trademark owner. *See Cohen & Co., Ltd. v. Cohen & Co. Inc.*, No. CV 21-04442, 2022 WL 5250271, at *3 (E.D. Pa. Oct. 6, 2022); *Schneider Natl. Carriers, Inc. v. Raptor Auto Transport, Inc.*, No. 1:23-CV-00469, 2023 WL 4685376, at *3 (N.D. Ohio July 21, 2023); *Gucci Am.*, 868 F. Supp. 2d at 242.

Therefore, to state a claim for counterfeiting, Plaintiff must plausibly allege that New Balance used a "spurious mark" that "is identical with, or substantially indistinguishable from," Plaintiff's purported HOOPLIFE mark. *Sturgis*, 908 F.3d at 340.

> Marks are not counterfeits solely by reason of their visual or aural indistinguishability. To be a counterfeit, a junior mark must both be substantially indistinguishable from the registered mark and be "spurious"--that is, indistinguishable in such a way that the junior mark ***tricks the consumer*** into believing he or she is getting the product denoted by the registered mark.

*Illinois Tool Works, Inc. v. J-B Weld Co., LLC,* 469 F. Supp. 3d 4, 9 (D. Conn. 2020) (emphasis added; internal quotations omitted). Put simply, the essence of counterfeiting is that the use of the infringing mark "*seeks to trick the consumer* into believing he or she is getting the genuine article, rather than a 'colorable imitation.'" *Gucci Am.*, 868 F. Supp. 2d at 242 (emphasis added).

District courts therefore regularly dismiss counterfeiting claims, often with prejudice, where the face of the complaint shows that the product or packaging bearing the alleged infringing mark is neither "identical to" or "substantially indistinguishable from" the at-issue marks, nor "spurious" attempts to trick consumers. *See e.g., Lontex Corp.*, 384 F. Supp. 3d at 559; *Playvision Labs, Inc. v. Nintendo of Am., Inc.*, 2015 WL 12941892 (N.D. Cal. May 18, 2015); *Adidas Am., Inc. v. Aviator Nation, Inc.,* 2020 WL 9594397 at *5 (D. Or. Aug. 5, 2020); *Illinois Tool Works,* 469 F.Supp.3d at 12. Here, the face of Plaintiff's Complaint makes it clear that the accused infringing products are not counterfeits of any products offered by Plaintiff.

**1. Plaintiff's Cursory Allegations Do Not Establish a Claim of Counterfeiting**

"[T]o plead a counterfeiting claim, Plaintiff must do more than make conclusory allegations that 'Defendants' use of the . . . mark is identical,' and that Defendants' use 'was and is a counterfeit mark because it is a counterfeit of a mark that is registered' for the same goods." *Adams v. Grand Slam Club/Ovis*, No. 12-CV-2938-WJM-BNB, 2013 WL 1444335, at *7 (D. Colo. Apr. 9, 2013). Here, Plaintiff's Complaint lacks any factual basis to plausibly allege that the items customized by the Hooplife Basketball Academy and produced by New Balance bore trademarks that were both "spurious" and "identical with, or substantially indistinguishable from" the trademarks born by Plaintiff's own products. Instead, Plaintiff makes only conclusory allegations (without factual support) that New Balance's actions meet the statutory definition of counterfeiting. Such pleadings are insufficient to state a claim of counterfeiting. *Adams*, 2013 WL 1444335, at *7.

Specifically, Plaintiff alleges that:

- "New Balance sold, manufactured and shipped products bearing the Plaintiff's 'HOOPLIFE' mark. A mark that was not authentic. Meaning it was not the mark of the registered trademark owner (the Plaintiff). New Balance's 'HOOPLIFE' mark was 'spurious', 'not genuine', a 'counterfeit' of the Plaintiff's authentic and registered

'HOOPLIFE' mark as clearly defined by 15 U.S.C. §1117 (Recovery for violation of Rights)" (Dkt. No. 1 ¶ 31; *see also id.* ¶ 38);

- "New Balance used a 'counterfeit' mark that was IDENTICAL to the Plaintiff's 'HOOPLIFE' mark on IDENTICAL goods "athletic uniforms", listed in the Plaintiff's registered trademark for 'HOOPLIFE'" (*id.* ¶¶ 32, 64-65);

- Because New Balance counsel in previous litigation in filings directed to a lack of personal jurisdiction referred to the accused infringing products under the defined term "HOOPLIFE uniforms" or "HOOPLIFE athletic uniforms," this is somehow an admission of counterfeiting (*id.* ¶¶ 19-21, 25, 32-35, 64-65, 69, 79, 88).[2]

Indeed, a review of the Complaint shows that other than Plaintiff's unsupported references to New Balance's counsel's use of the term "HOOPLIFE uniforms" to refer to the accused infringing products in previous disputes, Plaintiff makes ***no factual allegations*** directed to counterfeiting. Instead, Plaintiff only quotes the statutory definition of counterfeiting and assumes that this is enough. This is incorrect.

It is black letter law that such threadbare pleading is fundamentally insufficient to state a claim. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555; *see also Adams*, 2013 WL 1444335, at *7 (dismissing claims of counterfeiting where the plaintiff made only cursory allegations that defendants met the statutory requirements set forth in the Lanham Act). As Plaintiff has made ***no affirmative allegations*** supporting his claims of counterfeiting, the Court should dismiss Claim II.

---

[2] Plaintiff's Complaint spends much effort on alleging that New Balance counsel's use of the defined term the "HOOPLIFE uniforms" in previous litigation filings directed to the question of jurisdiction somehow represents some kind of admission of infringement. Not only is the referenced attorney argument not a factual admission of any kind, *Mformation Techs., Inc. v. Rsch. in Motion Ltd.*, No. C-08-4990 EMC, 2012 WL 5633862, at *6 (N.D. Cal. Nov. 15, 2012) (finding that "counsel's admissions were, in fact, not admissions at all" but merely articulations of counsel's conception of the legal theory of the case.), but also references to how New Balance counsel may have named the accused infringing products are wholly irrelevant to whether those products are "identical with, or substantially indistinguishable from" products provided by Plaintiff.

**2. Plaintiff's Own Pleadings Demonstrate That the Accused Infringing Products Are Not "Identical with, or Substantially Indistinguishable from" Plaintiff's Products**

Not only does the Complaint lack any affirmative allegations supporting Plaintiff's claim of counterfeiting, but the few facts it does allege make it clear that the accused infringing products do not bear trademarks that are similar enough to satisfy the requirements of counterfeiting under the Lanham Act. Dkt. No. 1, ¶¶ 20-21; *id.* at 15-17.

In assessing the validity of counterfeiting claims, it is not enough simply to consider whether a mark is "identical with, or substantially indistinguishable from" a registered mark "in the abstract"; the comparison must be "made from the perspective of an average purchaser." *Lontex Corp.*, 384 F. Supp. 3d at 557; *Schneider Saddlery Co.*, 2009 WL 864072, at *4. The allegedly counterfeit mark must therefore be compared not to a registration with the U.S.P.T.O., but with "the registered mark as it appears on actual merchandise to an average purchaser." *Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp.*, 486 F. Supp. 2d 286, 289 (S.D.N.Y. 2007); *Lontex Corp.*, 384 F. Supp. 3d at 546; *One Hanover, LLC v. Witkoff Group LLC*, No. 22 CIV. 2723 (VM), 2023 WL 3304026, at *4 (S.D.N.Y. May 8, 2023).

Courts regularly engage in a direct comparison of the alleged infringing goods with those produced by the plaintiff. For example, the *Lontex Corp.* court's methodology is illustrative. There, the plaintiff asserted counterfeiting claims based on allegations that the plaintiff had registered the wordmark "COOL COMPRESSION" in connection with medical "compression sleeves, tights, and leggings" and that Nike had been selling compression apparel bearing the same COOL COMPRESSION trademark. *Lontex Corp.*, 384 F. Supp. 3d at 549. When Nike argued that the trademarks as they appeared on the allegedly counterfeit products were not sufficiently similar, the *Lontex* plaintiff countered with the argument that because it had a wordmark registration comprising "standard characters without claim to any particular font, style, size, or

color," their counterfeiting claim was "not limited to any particular presentation." *Id.* at 559. In other words, the *Lontex* plaintiff argued that when a party has a trademark registration on a word or series of words, there is no need to assess how that trademark would be encountered on actual products in the marketplace.

In rejecting that argument, the *Lontex* court stressed that "[t]o establish counterfeiting in the case of a word mark, it cannot be enough that one word used in the allegedly offending mark is the same, with no reference to . . . context." *Id.* (citing *GMA Accessories, Inc.*, 765 F. Supp. 2d at 472). Instead, the court engaged in a side-by-side comparison of the trademarks as they appeared on the allegedly "similar" products in the pleadings, finding that the presentation of the trademarks made their visual impression markedly different. *Id.* at 557-59. Specifically, the court found that the use of different fonts and presentations for the wordmarks, as well as the existence of additional words, house marks, and other product-based contexts made it clear that a consumer would not perceive defendant's products to be plaintiff's. *Id.*

The Third Circuit endorsed this approach on appeal – in an analysis that relied on the Eighth Circuit's *Sturgis Motorcycle Rally* opinion:

> We measure the similarity of two marks by comparing the "overall impression" ordinary consumers would have upon encountering the marks. A trademark, after all, derives its "commercial impression" from its appearance "as a whole, not from its elements separated and considered in detail." Put simply, if consumers see "the entirety of the marks," "it is the entirety of the marks that must be compared."
>
> In this case, an ordinary consumer viewing the entirety of the "Cool Compression" marks used by Nike and Lontex would not find the marks "identical" or "substantially indistinguishable."

*Lontex Corp. v. Nike, Inc.*, 107 F.4th 139, 158–59 (3d Cir. 2024) (internal citations omitted). Because the trademarks, in context, were not "substantially indistinguishable," as a matter of law there could be no finding of counterfeiting, and dismissal was warranted. *Id.*

Here, as in *Lontex*, the Complaint makes it clear that the accused infringing products do not bear trademarks that are "identical with, or substantially indistinguishable from," Plaintiff's own purported HOOPLIFE mark. A side-by-side comparison of the allegedly infringing sports apparel shows that the purported marks are simply not "spurious" and "identical" or "substantially indistinguishable."

**Images of the Purported HOOPLIFE Trademarks as They Appear on Plaintiff's Products[3]**










[3] The referenced color versions of the photographs included within the Complaint were previously included within Plaintiff's complaint brought against New Balance before the District Court for the Western District of Texas. *See Magee v. New Balance Athletics*, CA No. 5:23-CV-923-FB Third Amended Complaint (W.D. Tex. August 21, 2023).

**<u>Images of the Purported HOOPLIFE Trademarks as They Appear on Defendant's Products</u>**















Not only do the trademarks themselves have a clearly different visual impression – using different fonts, layouts, and colors – but each of the marks is consistently shown in connection with the distinct house marks and logos of each party. *See One Hanover, LLC*, 2023 WL 3304026, at *4 (dismissing claims of counterfeiting where there were clear indicia of source on the alleged infringing products); *Arcona, Inc. v. Farmacy Beauty, LLC*, 2019 WL 1260625, at *3 (C.D. Cal. 2019) (identical names of beauty products were not counterfeit when products, including dispensing packages, were visually distinct); *Audemars Piguet Holding S.A. v. Swiss Watch Intern., Inc.*, No. 12 CIV. 5423 LAP, 2015 WL 150756, at *2 (S.D.N.Y. Jan. 12, 2015) (despite identical use of Royal Oak registered "octagonal bezel," defendant's use of house marks and "context of the entire watch" defeated counterfeiting claim); *GTFM, Inc. v. Solid Clothing Inc.*, 2002 WL 1933729, at *2 (S.D.N.Y. 2002) (identical use of "05" mark is not counterfeit when word marks appeared differently in the marketplace); *see also Sturgis*, 908 F.3d at 339-340 (finding as a matter of law that products bearing different house marks, designs, and fonts precluded counterfeiting as a matter of law). For example, each of Plaintiff's products bears plaintiff's jagged line logo and a tag stating "HOOPLIFE BRAND – AUTHENTIC", and the accused garments made by New Balance bear New Balance's iconic NB house mark. *Id.* These obvious differences make it clear that the materials made by New Balance are not the same as those produced by Plaintiff. *Id.*

Because Plaintiff's own pleadings make it clear that the parties' trademarks are not "identical" or "substantially indistinguishable," Plaintiff's counterfeiting claim must be dismissed.

#### 3. Plaintiff's Own Pleadings Make It Clear that any use of the HOOPLIFE Trademark on the Accused Infringing Products Was Not "Spurious."

"To be a counterfeit, a junior mark must both be substantially indistinguishable from the registered mark and be 'spurious'—that is, indistinguishable in such a way that the junior mark

'trick[s] the consumer into believing he or she is getting' the product denoted by the registered mark. *Illinois Tool Works*, 469 F. Supp. 3d at 9 (citing *Guess?*, 868 F. Supp. 2d at 242.). "Spurious" therefore does not merely mean "use without an owner's authorization," but requires plausible allegation of a use intended or directed towards tricking consumers into believing the defendant's products are in fact plaintiff's. *Cohen & Co., Ltd. v. Cohen & Co. Inc.*, No. CV 21-04442, 2022 WL 5250271, at *3 (E.D. Pa. Oct. 6, 2022). In other words, if it is clear from the pleadings that no buyer of an allegedly counterfeit product could believe that that product was in fact offered by the plaintiff, as a matter of law there is no counterfeiting. *See Illinois Tool Works*, 469 F. Supp. 3d at 9; *Lontex Corp*, 384 F. Supp. 3d at 561 (dismissing counterfeiting claim with prejudice because, as a matter of law, it was implausible that a consumer could be tricked into believing the defendant's products were plaintiff's); *Cohen*, 2022 WL 5250271, at *3 (dismissing with prejudice counterfeiting claims because "Plaintiff has not alleged, nor can it allege, that Defendant uses the 'Cohen & Company' name to imply its services derive from Plaintiff's accounting firm").

Here, Plaintiff's own pleadings show that the alleged infringing use is not spurious. First, as described above, the products themselves are sufficiently visually distinct to prevent any belief that the products made by New Balance were in fact provided by Plaintiff. *See supra* Section (III)(A)(2). Moreover, the Complaint demonstrates that no consumer could be tricked into believing that the accused infringing products produced by New Balance were in fact provided by Plaintiff because the pleadings expressly state that all of the accused infringing products were designed by the sole customer that purchased them. Specifically, Plaintiff alleges that the "uniforms were designed by and ordered by [Hooplife Basketball Academy] through New Balance's website newbalanceteam.com" and that "ALL" of the accused infringing products "were

billed and shipped to the same customer(s) in Arkansas." Dkt. No. 1 ¶¶ 21. 44. As such, this is not a circumstance where New Balance acted as a platform hosting user generated apparel designs so as to sell them to unsuspecting consumers. Instead, the Hooplife Basketball Academy not only actively designed the athletic wear bearing the purportedly infringing HOOPLIFE name but then directed New Balance to create those garments directly for Hooplife Basketball Academy's own use. *Id.* The sole consumer of the allegedly infringing products was therefore also the sole entity that made all the choices in the design of said products. *Id.* Because there can be no plausible scenario where the Hooplife Basketball Academy's own design "spuriously" tricked that same Hooplife Basketball Academy into believing it was somehow purchasing Plaintiff's products, there was no counterfeiting as a matter of law. *See Illinois Tool Works*, 469 F. Supp. 3d at 9 (dismissing counterfeiting claim with prejudice because, as a matter of law, it was implausible that a consumer could be tricked into believing the defendant's products were plaintiff's); *Lontex Corp*, 384 F. Supp. 3d at 561 (same); *Cohen*, 2022 WL 5250271, at *3 (same).

Because there is no possibility of confusing the accused infringing products with those provided by Plaintiff, Plaintiff's counterfeiting claims must be dismissed.

### B. Plaintiff's Prayer for Relief Improperly Calculates the Requested Statutory Damages Under 15 U.S.C. § 1114

Putting aside the question of whether the Complaint sufficiently states a claim of counterfeiting under the Lanham Act – and it does not – Plaintiff also misstates the types of goods that Plaintiff asserts have been sold, offered for sale, or distributed. As Plaintiff's damages demand relies entirely on this misunderstanding, the Court should strike those demands pursuant to Rule 12(f). *Genter v. Allstate Prop. and Cas. Ins. Co.*, No. 11CV0709, 2011 WL 2533075, at *2 (W.D. Pa. June 24, 2011) ("A demand for damages that are not recoverable as a matter of law may be stricken pursuant to Rule 12(f)"); *Acosta v. Hovensa, LLC*, 53 V.I. 762, 781 (D.V.I. 2010).

15 U.S.C. § 1117(c) sets the statutory damages for a claim of counterfeiting, stating:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—
>
> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

Thus, counterfeiting statutory damages are to be calculated not on a plaintiff's registrations but based on the total number of types of counterfeit "goods or services sold, offered for sale, or distributed" by the defendant. 15 U.S.C. § 1117(c)(1); *see also Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli*, 575 F.3d 693, 698 (7th Cir. 2009) (stressing that recovery is limited to the "'type of goods'—not per individual item bearing the counterfeit mark"); *New Balance Athletics, Inc. v. USA New Bunren International Co. Limited LLC*, 2020 WL 5593932 at *2 (D. Del. 2020). One type of good is counted separately from another type of good if the "functional purpose of the product[s]" is different. *New Balance*, 2020 WL 5593932 at *2; *A.M. Surgical, Inc. v. Akhtar*, No. 15-CV-1318 (ADS)(SIL), 2016 WL 11543560, at *10 (E.D.N.Y. Apr. 19, 2016) (holding that scalpels, scissors, forceps, retractors, and probes were all different types of goods); *see also Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 688 (D.N.J. 2015) (holding that shirts and pants are different types of goods).

Here, Plaintiff incorrectly alleges that because it has a trademark registration directed to "9 types of goods ("shirts, pants, jackets, athletic uniforms, athletic bags, backpacks, gym bags, sports bags, book bags"), Plaintiff is entitled to ***nine*** instances of statutory damages for counterfeiting. Dkt. No. 1 ¶¶ 95-96. Yet the Complaint does not allege that New Balance produced allegedly infringing items in many of the categories of goods and services listed in Plaintiff's asserted registrations. Instead, the Complaint alleges that New Balance created 901 accused infringing products for Hooplife Basketball Academy in the following categories: shirts, pants, jackets, athletic uniforms, and backpacks.[4] *See* Dkt. No. 1 at 27-64. And the only factual allegations suggesting that these classes of items actually bore the allegedly infringing trademarks comprise of blurry images showing only its placement on shirts, jackets, and uniforms. *Id.* Plaintiff's own Complaint therefore shows that Plaintiff's claims for nine separate categories of counterfeiting damages under 15 U.S.C. § 1114 are without basis. As such, the Court should strike Plaintiff's flawed damages claim at Paragraphs 95-97 of the Complaint. *Genter*, 2011 WL 2533075 at *2 ("A demand for damages that are not recoverable as a matter of law may be stricken pursuant to Rule 12(f)"); *Acosta*, 53 V.I. at 781.

## V. CONCLUSION

For the foregoing reasons, New Balance respectfully requests that the Court grant its Partial Motion to Dismiss. Additionally, as Plaintiff's own pleadings make it clear that there can be no counterfeiting as a matter of law, Plaintiff respectfully asks that the dismissal be granted without first granting leave for Plaintiff to amend his claims. Alternatively, if the Court does not grant New Balance's Partial Motion to Dismiss, New Balance respectfully requests that the Court strike

[4] New Balance's reference to the categories listed in Plaintiff's registration is not a concession that such categories are functionally distinct and reserves the right to challenge the validity of such categories as a factual matter in this dispute.

Paragraphs 95-97 of Plaintiff's Prayer for Relief regarding the Complaint's improper calculation of the claim for statutory damages allowed under 15 U.S.C. § 1114.

Dated: June 30, 2025 Respectfully submitted,

*/s/ Tim Cullen*

Tim Cullen (Ark. Bar No. 97-062)
CULLEN & CO., PLLC
P.O. Box 3255
Little Rock, AR 72203
(501) 370-4800
tim@cullenandcompany.com

OF COUNSEL:

Robert D. Carroll (*Pro Hac Vice to be filed*)
Todd Marabella (*Pro Hac Vice to be filed*)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1000
Fax: (617) 523-1231
RCarroll@goodwinlaw.com
TMarabella@goodwinlaw.com

*Attorneys for Defendant New Balance Athletics, Inc.*

## ***CERTIFICATE OF SERVICE***

The document above was electronically filed with the court's electronic filing system on June 30, 2025. The Plaintiff is pro se and is not a registered use with the court's electronic filing system (Doc. 5); therefore, a copy of this document is being served on June 30, 2025, on Plaintiff by both e-mail and U.S. mail, first class postage paid, to the following addresses:

Steven Magee via email: hooplifeonline@yahoo.com

and

Steven Magee
8407 Bandera Road #103-403
San Antonio, TX 78250

*/s/ Tim Cullen*