**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

STEVEN MAGEE,

               Plaintiff,

     v.

NEW BALANCE ATHLETICS, INC.,

             Defendant.

Case No. 4:25-cv-00265-DPM

**<u>DEFENDANT NEW BALANCE'S MOTION TO STRIKE PLAINTIFF'S OPPOSITION
TO NEW BALANCE'S PARTIAL MOTION TO DISMISS</u>**

## TABLE OF CONTENTS
### PAGE

I. ARGUMENT ....................................................................................................... 1

    A. PLAINTIFF'S USE OF FICTIONAL CASE CITATIONS IS A FRAUD ON THE
       COURT ..................................................................................................... 2

        1. Plaintiff's Entire Opposition Relies on Fake Legal Authority.. 3

        2. Plaintiff's Extensive Use of Fake Legal Authority Renders His
           Opposition Baseless .................................................................... 14

II. CONCLUSION ................................................................................................... 17

Defendant New Balance Athletics, Inc. ("New Balance") respectfully submits this Motion to Strike Plaintiff Steven Magee's ("Plaintiff") Opposition to New Balance's Partial Motion to Dismiss Claim II of the Complaint (the "Opposition"). As discussed below, Plaintiff has sought to avoid the inevitable dismissal of its defective counterfeiting claim by advancing nonexistent legal principles that directly contravene applicable law. Plaintiff has based his entire Opposition brief on repeated fictitious citations and statements of law, including extensive false quotations from nearly every case cited.

Due to the extensive nature of Plaintiff's false and misleading statements to the Court, as well as Plaintiff's inability to refute any of New Balance's arguments without resorting to such misstatements, New Balance asks that this Court strike Plaintiff's Opposition and grant New Balance's Motion to dismiss Claim II of the Complaint for failure to state a claim and to strike Paragraphs 95-97 of Plaintiff's Prayer for Relief, with prejudice.

## I.    ARGUMENT

As discussed in New Balance's initial briefing, not only is Plaintiff's counterfeiting claim only supported by threadbare recitations of the legal elements of such a claim, but that claim is in fact belied by the few factual allegations the Complaint does provide. *See* Dkt. No. 12. The facts as pleaded show (1) that the apparel designed by Hooplife Basketball Academy and manufactured by New Balance ("the accused infringing products") were not sufficiently "identical" or "substantially indistinguishable" to the trademarks and products offered by Plaintiff to state a plausible claim for counterfeiting (Dkt. No. 1, at 28-64); and (2) New Balance's production of the accused infringing products was not "spurious" because they were made for a single client, the very entity that designed them, and thus could not be deceptive (*id*. ¶¶ 20-21; *id*. at 15-17). Additionally, Plaintiff's pleading incorrectly attempts to calculate his potential

statutory damages under 15 U.S.C. §1117 based not on the products Plaintiff alleges New Balance sold, but on the categories of goods listed in Plaintiff's own registrations. *Id*. ¶¶ 95-96

In his response, Plaintiff purports to offer authority refuting New Balance's legal arguments. However, even a cursory review of Plaintiff's brief shows that Plaintiff has either actively sought to mislead the Court by creating legal quotations, holdings, and case citations from whole cloth, or carelessly used generative artificial intelligence programs ("generative AI") without engaging in any efforts to ensure the accuracy of the arguments he submitted to this Court. Not only is the use of false legal authority strong evidence that Plaintiff's claims are so defective that they can only be salvaged by ignoring or subverting existing law, but it also represents a serious violation of Plaintiff's duty of candor to the Court which "degrades or impugns the integrity of the Court" and "interferes with the administration of justice." *United States v. Hayes*, 763 F. Supp. 3d 1054, 1064 (E.D. Cal. Jan. 17, 2025), *reconsideration denied*, No. 2:24-CR-0280-DJC, 2025 WL 1067323 (E.D. Cal. 2025). As such, this Court should strike Plaintiff's Opposition and grant New Balance's Partial Motion to Dismiss with prejudice.

### A.    PLAINTIFF'S USE OF FICTIONAL CASE CITATIONS IS A FRAUD ON THE COURT

The use of fabricated case citations and fake legal authority – often due to the use of generative AI – "has been the topic of many published legal opinions and scholarly articles as of late." *O'Brien v. Flick*, No. 24-61529-CIV, 2025 WL 242924, at *6 (S.D. Fla. Jan. 10, 2025) (collecting cases); *see also Lacey v. State Farm Gen. Ins. Co.*, No. CV 24-5205 FMO (MAAX), 2025 WL 1363069, at *3 (C.D. Cal. May 5, 2025) ("With greater frequency, courts are now regularly evaluating the conduct of lawyers and *pro se* litigants who improperly [provide fictitious legal authority]"); *Versant Funding LLC v. Teras Breakbulk Ocean Nav. Enterprises, LLC*, No. 17-CV-81140, 2025 WL 1440351, at *3 (S.D. Fla. May 20, 2025) (discussing how the rise of generative AI has increased the submission of hallucinatory legal authority in briefing). Courts

that have addressed the practice have consistently agreed that the use of fake legal authority is highly problematic and warrants striking pleadings that rely on such authority. *See, e.g.*, *O'Brien*, 2025 WL 242924, at *6-7 (striking sur-reply that relied upon false legal authority and imposing further sanctions pursuant to Rule 11(c)(3)).

Nor is the use of false legal authority a harmless mistake or clerical error. "Many harms flow from the submission of fake opinions. The opposing party wastes time and money in exposing the deception. The Court's time is taken from other important endeavors . . . . There is potential harm to the reputation of judges and courts whose names are falsely invoked . . . ." *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448–49 (S.D.N.Y. 2023). And fictious citations promote "cynicism about the legal profession and the American judicial system [because] . . . a future litigant may be tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity."). *Id*.

The use of fake or hallucinatory legal authority in a written submission to the court is a stark violation of a party's obligations of candor to the court. Importantly, a party's *pro se* status does not absolve them of the responsibility to abide by this duty of candor. *See Moton v. Cowart*, 631 F.3d 1337, 1340 n.2 (11th Cir. 2011) ("While we must construe the pleadings of *pro se* defendants liberally, 'we nevertheless have required them to conform to procedural rules.'"); *Baldwin v. Boone*, 812 F.2d 1400 (4th Cir. 1987) ("This rule applies to pro se litigants as well as those represented by an attorney."); *Kendrick v. Sec'y, Florida Dep't of Corr.*, 21-12686, 2022 WL 2388425, at *3 (11th Cir. July 1, 2022) ("[w]hile it is true pro se pleadings are held to a less strict standard than counseled pleadings and are liberally construed ... [pro se litigants] also owe the same duty of candor to the court as imposed on any other litigant.").

### 1.    Plaintiff's Entire Opposition Relies on Fake Legal Authority

As shown in the chart attached as Exhibit A, other than procedural citations (such as citations to *Iqbal*, *Twombly*, and *Adams v. Grand Slam Club/Ovis* which were cited in New

Balance's initial memorandum of law), the vast majority of the statements of law, case citations, and legal quotations included in support of Plaintiff's arguments are inaccurate or fictitious. *See* Exhibit A. Not only do the majority of the extensive quotes that Plaintiff relies on to defend his deficient pleadings not actually exist, but as discussed at length below, almost every case Plaintiff cites in support of his false legal positions is either silent on the issue or provides an opinion in direct opposition to the argument for which Plaintiff cited them. And in at least two instances, the legal opinion cited by Plaintiff simply does not exist at all. See Exhibit A, at 3.

As but one striking example, Plaintiff's Opposition lists nine cases that purportedly support Plaintiff's claim that it is "a fundamental principle of trademark law" that context is irrelevant and that the use of the same or similar word mark on similar goods is all that is needed to establish counterfeiting. Dkt. No. 13 at 8-10. But ***not one*** of these cases contains such a holding. Additionally, perhaps to increase the verisimilitude of the citations, Plaintiff also includes purported quotations from each case that appear to strongly endorse Plaintiff's argument. *Id*. But as shown below, ***not one*** of these quotations exists either.

***Coach, Inc. v. Peters*, 386 F. Supp. 2d 411 (S.D.N.Y. 2005)**

- Plaintiff's Purported Holding: "The court found counterfeiting even where the defendant did not copy the exact logo or style, stating: '*The fact that the mark is a registered word mark means it is protected regardless of font, style, size, or color.' (386 F. Supp. 2d at 417)*." Dkt. No. 13 at 8.

- *Coach* does not involve claims of Lanham Act counterfeiting, but is instead directed to an appeal of a rejection of a copyright application. *See Coach*, 386 F. Supp. 2d at 497 (stressing that while "[t]he decision of the Register of Copyrights to deny an application for registration is reviewable under the APA," that denial will only be overturned "where it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'")

- ***Neither the quote included in Plaintiff's brief nor the holding Plaintiff purports to summarize appears anywhere in the* Coach *opinion.***

***Gucci America, Inc. v. MyReplicaHandbag.com*, No. 07 Civ. 2438 (JGK), 2008 WL 512789 (S.D.N.Y. Feb. 26, 2008)**

- Plaintiff's Description of the Purported Holding: "The court ruled that handbags labeled with the word mark "GUCCI" were counterfeit, even without copying the precise logo, stating: '*The use of the word mark 'GUCCI' on handbags constitutes counterfeiting, irrespective of the font or stylization.' (2008 WL 512789, at \*2)*" Dkt. No. 13 at 8.

- The cited case is not directed to the subject matter Plaintiff suggests. Instead *Gucci* involves a discussion of how to calculate statutory damages, especially in the context of a default judgement. *Gucci*, 2008 WL 512789, at \*1 ("This is an uncontested inquest following a September 7, 2007 default judgment against the defendants. [Plaintiffs] seek a permanent injunction and damages for the defendants' infringement of their trademarks and copyrights"). Importantly, the court does not make any assessment of how to establish counterfeiting as the case concerned a default judgement on liability. *Id*. at \*1, \*3.

- ***Neither the quote included in Plaintiff's brief nor the holding Plaintiff purports to summarize appears anywhere in the* Gucci *opinion.***

***General Electric Co. v. Speicher*, 877 F.2d 531 (7th Cir. 1989)**

- Plaintiff's Description of the Purported Holding: "Selling light bulbs with "GE" and "General Electric" word marks was counterfeiting, stating: '*A mark need not be a facsimile; the use of a registered word mark in connection with the same goods is sufficient, regardless of the form or style in which the mark appears.' (877 F.2d at 534).*" Dkt. No. 13 at 9.

- The cited case is not directed to the subject matter Plaintiff suggests. Instead, *GE* involves a discussion of how a distributor's continued sale of goods after the expiration or cancellation of a license is not "counterfeiting" in the literal sense but was still potentially a violation of 15 U.S.C. § 1114. *Gen. Elec. Co. v. Speicher*, 877 F.2d 531, 534 (7th Cir. 1989) ("The literal sense might be the correct one if section 1114(1)(a) were aimed just at 'counterfeiting.' But as the words 'reproduction,' 'copy,' and 'colorable imitation' suggest more clearly than "counterfeiting," the aim is broader: to prohibit the use of your trademark on someone else's product without your authorization.")

- ***Neither the quote included in Plaintiff's brief nor the holding Plaintiff purports to summarize appears anywhere in the* GE *opinion.***

***Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377 (6th Cir. 2006)**

- Plaintiff's Description of the Purported Holding: "The sale of cigarettes with the "Newport" word mark was counterfeiting, even when presented differently, stating: '*[T]he use of the word mark 'Newport' on cigarettes constitutes counterfeiting, regardless of the font or stylization.' (453 F.3d at 382).*" Dkt. No. 13 at 9.

- The cited case is not directed to the subject matter Plaintiff suggests, but instead is directed to a discussion of the standard for a preliminary injunction and the lower court's failure to properly apply that standard. *Lorillard*, 453 F.3d at 380 ("As already indicated, the record makes it abundantly clear that the district court did not look to the prescribed factors in reaching its decision. [The lower court failed to make] any findings, specific or otherwise, as to the likelihood of Lorillard's success on the merits, the risk of Lorillard suffering irreparable harm if the injunction were not issued, the particular harms to others that an injunction would cause or the impact of an injunction on the public interest."). Importantly, the court does not make any assessment of how to establish counterfeiting as the existence of counterfeit products was uncontested. *Id*. at 381.

- ***Neither the quote included in Plaintiff's brief nor the holding Plaintiff purports to summarize appears anywhere in the*** **Lorillard** ***opinion.***

### *Louis Vuitton Malletier S.A. v. Lee*, 875 F. Supp. 2d 128 (E.D.N.Y. 2012) [sic]

- Plaintiff's Description of the Purported Holding: "Use of 'LOUIS VUITTON' on handbags was counterfeiting, stating: *'The mark is protected regardless of how it is presented so long as the goods are the same and the mark is identical.' (875 F. Supp. 2d at 134–35)*" Dkt. No. 13 at 9.

- ***The cited case does not appear to exist, and appears to have been "hallucinated" out of whole cloth. A search for the purported quote (or subdivisions such as "The mark is protected regardless of how it is presented") in Westlaw does not return any results.***

### *Rolex Watch U.S.A., Inc. v. Jones*, 2002 WL 596354 (N.D. Ill. [sic][1] Apr. 17, 2002)

- Plaintiff's Description of the Purported Holding: "Watches with "ROLEX" word mark held counterfeit, even with design differences, stating: '*Counterfeiting exists where the mark used is identical to the registered mark, regardless of differences in packaging or other aspects of presentation.' (2002 WL 596354, at *2).*" Dkt. No. 13 at 9.

- The cited case is not directed to the subject matter Plaintiff suggests, but instead discusses a pro se defendant's refusal to engage in court ordered discovery directed to damages, and the use of Copyright caselaw in assessing trademark statutory damages. *Rolex*, 2002 WL 596354 at *1-3, *5 ("In the absence of any guidelines for determining the appropriate award in a case involving wilful [sic] trademark violations, several courts in this Circuit have looked for guidance to the better developed case law under Section 504(c) of the Copyright Act"). Importantly, the court does not make any assessment of how to establish counterfeiting as the existence of counterfeit products was uncontested. *Id*. at *1. However, in its default summary judgement order, the Rolex court stressed the importance of the fact that "the marks on the products marketed by Jones are virtually

---

[1] *Rolex Watch U.S.A., Inc. v. Jones* is a case from the District Court for the Southern District of New York, not the District Court for the Northern District of Illinois.

identical to the plaintiffs' marks, and Jones' products are designed to be identical to the plaintiffs' products" as well as the fact that "the products are sold in the same markets, and . . . have caused actual confusion among consumers." *Rolex Watch U.S.A., Inc. v. Jones*, No. 99 CIV. 2359 (DLC), 2000 WL 1528263, at *3 (S.D.N.Y. Oct. 13, 2000).

- ***Neither the quote included in Plaintiff's brief nor the holding Plaintiff purports to summarize appears anywhere in the* Rolex *opinion.***

*Philip Morris USA Inc. v. Felizardo*, **2004 WL 1375277 (S.D.N.Y. June 18, 2004)**

- Plaintiff's Description of the Purported Holding: "Cigarettes using the 'Marlboro' word mark were found to be counterfeit, stating: *'The use of the 'Marlboro' word mark, regardless of packaging or stylization, constitutes counterfeiting.' (2004 WL 1375277, at *5).*" Dkt. No. 13 at 9-10.

- The cited case is not directed to the subject matter Plaintiff suggests, but instead is directed to a discussion of whether the facts alleged in a claim for summary judgement were effectively refuted by defendant. *Philip Morris*, 2004 WL 1375277, at *3 ("Because Felizardo failed to submit any opposition to Philip Morris' 56.1 Statement, and in addition, failed to cite, in his memorandum, to admissible evidence in support of his arguments, Felizardo has failed to establish the existence of any material issues of disputed fact.") Of particular importance to this dispute is the recognition by the court that the defendant did not dispute that the cigarettes he was reselling were counterfeit. *Id.* at *5.

- ***Neither the quote included in Plaintiff's brief nor the holding Plaintiff purports to summarize appears anywhere in the* Philip Morris *opinion.***

*Tiffany (NJ) Inc. v. eBay Inc.*, **600 F.3d 93 (2d Cir. 2010)**

- Plaintiff's Description of the Purported Holding: "Counterfeit sales using identical word marks on an online marketplace [sic], stating: *'A mark is counterfeit if it is 'spurious and is identical with, or substantially indistinguishable from, a registered mark' (600 F.3d at 101, quoting 15 U.S.C. § 1127).*" Dkt. No. 13 at 10.

- A landmark case in the context of trademark law, *Tiffany v. eBay* is not directed to assessing whether a claimed product is a counterfeit, but is instead directed to whether contributory liability applies under the Lanham Act and the level of knowledge needed to establish such liability for a website that offers a platform to third-party resellers. *Tiffany*, 600 F.3d at 105-110.

- ***Neither the quote included in Plaintiff's brief nor the holding Plaintiff purports to summarize appears anywhere in the* Tiffany *opinion.***

*Spin Master Ltd. v. 158*, **463 F. Supp. 3d 348, 375 (S.D.N.Y. 2020)**

7

- Plaintiff's Description of the Purported Holding: "Use of the exact same word mark on similar goods constitutes trademark counterfeiting under the Lanham Act, establishing that unauthorized use of an identical mark qualifies as a counterfeit mark. *(463 F. Supp. 3d at 375)*" Dkt. No. 13 at 10.

- The cited case is not directed to the subject matter Plaintiff suggests, but instead is directed to a discussion of (1) personal jurisdiction and (2) the assessment of a motion for default judgment. *Spin Master*, 463 *F. Supp. 3d* at 361-70. And the only analysis of whether there was any actual counterfeiting turned on an analysis of how the allegedly infringing trademark was used *on the purportedly similar products* in the market. *Id*. at 369. Thus, contrary to Plaintiff's suggestion that all that is needed is to compare word marks in the abstract without any analysis of how those word marks are actually used, *Spin Master* engages – albeit briefly – in exactly the analysis that New Balance has advocated. *Id*. at 369 (stating "there is no question that the 'BUNCHEMS' logo used in the three examples of Counterfeit Products provided in the Complaint is 'substantially indistinguishable' from the Bunchem Marks" and "[t]he featured toys are substantially indistinguishable from Bunchem's Products" based on imagery included in the Complaint). Thus, the *Spin Master* holding is emphatically NOT that the mere "unauthorized use of an identical mark qualifies as a counterfeit mark."

- ***Neither the quote included in Plaintiff's brief nor the holding Plaintiff purports to summarize appears anywhere in the* Spin Master *opinion.***

Nor are these the only false case citations in Plaintiff's brief. As discussed above, apart from Plaintiff's procedural citations directed to the proper standard of review for a motion to dismiss every other legal argument Plaintiff advances in his Opposition relies on made-up authority. See Exhibit A. Further examples are discussed below.

### a)    Plaintiff's Arguments Regarding the Requirement that the Accused Infringing Products Be 'Identical' or 'Substantially Indistinguishable'

Plaintiff's argument that "whether two marks are 'identical' or 'substantially indistinguishable' is a question of fact" relies on false citations to *Spin Master* and *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1007 (S.D. Tex. 2000). Dkt. No. 13 at 2. Neither case is directed to a Rule 12 motion to dismiss; neither discusses how to assess whether two marks are "identical" or "substantially indistinguishable"; and neither addresses whether this

question is one of fact or law. ***Thus, the cited cases do not provide any opinion directed to Plaintiff's assertion, let alone supporting it***.

*Spin Master* and *Microsoft Corp* are silent regarding the established legal principle that a court may, as a matter of law, find that the pleadings themselves prohibit a finding that two products are "identical" or "substantially indistinguishable." *Lontex Corp. v. Nike, Inc.*, 384 F. Supp. 3d 546, 554-55 (E.D. Pa. 2019), *aff'd,* 107 F.4th 139 (3d Cir. 2024); *see also One Hanover, LLC v. Witkoff Group LLC*, No. 22 CIV. 2723 (VM), 2023 WL 3304026, at *4 (S.D.N.Y. May 8, 2023) (dismissing claims of counterfeiting where there were clear indicia of source on the alleged infringing products); *Arcona, Inc. v. Farmacy Beauty, LLC*, 2019 WL 1260625, at *3 (C.D. Cal. 2019) (identical names of beauty products were not counterfeit when products, including dispensing packages, were visually distinct); *Audemars Piguet Holding S.A. v. Swiss Watch Intern., Inc.*, No. 12 CIV 5423 LAP, 2015 WL 150756, at *2 (S.D.N.Y. Jan. 12, 2015) (despite identical use of Royal Oak registered "octagonal bezel," defendant's use of house marks and "context of the entire watch" defeated counterfeiting claim); *GTFM, Inc. v. Solid Clothing Inc.*, 2002 WL 1933729, at *2 (S.D.N.Y. 2002) (identical use of "05" mark is not counterfeit when word marks appeared differently in the marketplace); *see also Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 339-340 (8th Cir. 2018) (finding that products bearing different house marks, designs, and fonts precluded counterfeiting as a matter of law).

Additionally, Plaintiff's claim that "[c]ourts have repeatedly held that '[t]he use of an identical word mark is strong evidence of counterfeiting, even if other features of the product or packaging differ'" relies upon false citations to *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) and *Louis Vuitton Malletier v. Veit*, 211 F. Supp. 2d 567, 580 (E.D. Pa. 2002). Dkt. No. 13 at 6. ***As an initial point, none of Plaintiff's quotations***

***from these cases exist – they are entirely fabricated. Additionally, neither case says what Plaintiff represents it does.*** *Duty Free Apparel* involved summary judgment over the question of whether resold goods were in fact authentic, which would defeat liability (286 F. Supp. 2d at 287) and *Veit* reports a finding of fact that allegedly infringing items were in fact counterfeit, and included a full assessment of the similarities of the marks and the products they appear on (211 F. Supp. 2d 575-79). Neither case refutes the well-established principle that alleging counterfeiting requires more than alleging the use of the same word mark on the same or similar products. *Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp.*, 486 F. Supp. 2d 286, 289 (S.D.N.Y. 2007); *Lontex*, 384 F. Supp. 3d at 554-55; *One Hanover, LLC*, 2023 WL 3304026, at *4.

> **b)     *Plaintiff's Arguments Regarding the Impact of House Marks or Other Branding to Distinguish the Accused Infringing Products From Plaintiff's Own products***

Plaintiff's legal assertion that "[t]he addition of a house mark or other branding does not necessarily defeat a counterfeiting claim if the accused products PROMINENTLY DISPLAY the registered mark" relies on false citations to *Software Wholesale Club*, 129 F. Supp. 2d at 1007 and *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005). Dkt. No. 13 at 6. ***Once again, none of Plaintiff's quotations from these cases exist; they are entirely made up. Additionally, neither case involves any discussion regarding the existence or non-existence of house marks in assessing if there has been counterfeiting under the Lanham Act.*** These cases therefore cannot refute the rule that the addition of a house mark or other branding can render two products fundamentally dissimilar for the purposes of alleging counterfeiting. *Lontex*, 384 F. Supp. 3d at 554-55; *One Hanovr, LLC*, 2023 WL 3304026, at *4; *Audemars Piguet*, 2015 WL 150756, at *2.

> **c)     *Plaintiff's Arguments Regarding the Facts and Holdings of***

**Lontex Corp. v. Nike, Inc.**

Plaintiff misrepresents the facts and holdings of *Lontex Corp. v. Nike, Inc.*, 384 F. Supp. 3d 546 (E.D. Pa. 2019), including once more ***inventing favorable quotations from that decision that do not in fact exist***. *See, e.g.*, Dkt. No. 13 at 6. For example, Plaintiff's purported quote from that decision, "the closer the marks are, the less weight should be given to other contextual differences," appears ***nowhere*** in the opinion.

*Lontex*, in fact, says the opposite, stressing that "[t]o establish counterfeiting in the case of a word mark, it cannot be enough that one word used in the allegedly offending mark is the same, with no reference to . . . context" and engaging in a side-by-side analysis even though the exact same words were used on both products. *Lontex*, 384 F. Supp. 3d at 559.

### d) Plaintiff's Arguments Regarding the Facts and Holdings of Gucci Am., Inc. v. Guess?, Inc.

Plaintiff again misrepresents the facts and holdings of *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207 (S.D.N.Y. 2012), completely inventing the quotation that "[t]he 'stitch-for-stitch' standard is most applicable where the allegation is that the defendant's entire product is a counterfeit of the plaintiff's product, not where the issue is over use of a word mark or logo." Dkt. No. 13 at 13. ***Plaintiff's quotation simply does not exist.***

In fact, the actual opinion at the pin cite Plaintiff provided says the opposite: "counterfeiting is the 'hard core' or 'first degree' of trademark infringement that seeks to trick the consumer into believing he or she is getting the genuine article, rather than a 'colorable imitation.' For this reason, courts have uniformly applied this provision to products that are stitch-for-stitch copies of those of another brand." *Guess?, Inc,* 868 F. Supp. 2d at 242. *Guess?, Inc* expressly does not limit this analysis to trade dress disputes only. *Id*.

### e)    *Plaintiff Fabricated Legal Authority to Contest New Balance's Argument that its Alleged Use Was Not Spurious as a Matter of Law*

Plaintiff attempts to use fake legal authority from *Arcona, Inc. v. Farmacy Beauty*, LLC, 976 F.3d 1074, 1080 (9th Cir. 2020); *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899, 913 (E.D.N.Y. 1988); *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 455 (S.D.N.Y. 2005); and *State of Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005) to refute that his Complaint demonstrates that New Balance's alleged use of the asserted trademark was not "spurious" as a matter of law.  Dkt. No. 13 at 15-17.  ***Once more, none of these cases supports Plaintiff's assertions, and while Plaintiff includes a quotation with each citation, each quotation <u>is fake and does not appear in the cited cases</u>***.  Indeed, many of these cases expressly *refute* the position Plaintiff advocates. *See Arcona*, 976 F.3d at 1080 ("Arcona makes the alternative argument that the court should presume a likelihood of confusion because Farmacy's 'EYE DEW' statement is allegedly identical to Arcona's mark.  But even assuming the marks are identical, there may be no presumption of consumer confusion if the products themselves are not identical.  Put another way, a court must review the product as a whole in determining whether an allegedly counterfeit product will likely cause confusion.").

Plaintiff also creates a fake quotation from *Veit* in support of Plaintiff's invented definition of "spurious" to mean "not genuine" or "not authentic," inventing language to "refute" New Balance's correct quotation of the standard.  Dkt. No. 13 at 17.  Not only does **Plaintiff's purported quotation not exist**, but a review of *Veit* shows that the case expressly supports New Balance's arguments.  Specifically, *Veit* holds that because counterfeiting is "the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark" a plaintiff must show that the defendant sought to trick consumers by "intentionally us[ing] the plaintiff's trademark, knowing it was a counterfeit." *Veit*, 211 F. Supp. 2d at 581.

12

Plaintiff's use of fictitious legal authority cannot refute the well-established principle that an allegation of counterfeiting must establish that the use was "spurious"—that is designed to "trick[s] the consumer into believing he or she is getting" the product denoted by the registered mark. *Illinois Tool Works*, 469 F. Supp. 3d at 9 (citing *Guess?*, 868 F. Supp. 2d at 242); *see also Cohen & Co., Ltd. v. Cohen & Co. Inc.*, No. CV 21-04442, 2022 WL 5250271, at *3 (E.D. Pa. Oct. 6, 2022) (dismissing with prejudice counterfeiting claims because "Plaintiff has not alleged, nor can it allege, that Defendant uses the 'Cohen & Company' name to imply its services derive from Plaintiff's accounting firm").

### f)    Plaintiff Fabricates Legal Authorities to Support Arguments in Opposition to New Balance's Motion to Strike

Plaintiff creates a fake quotation regarding the standard that is to be applied in resolving a motion to strike under Rule 12(f). Dkt. No. 13 at 17. Specifically, Plaintiff has invented the quotation "motions to strike a prayer for relief are disfavored unless it is clear that the damages sought could not be recovered under any set of facts that could be proved consistent with the allegations" and cites *United States v. Sensient Colors, Inc.,* 580 F. Supp. 2d 369, 374 (D.N.J. 2008); *Augustus v. Bd. of Pub. Instruction,* 306 F.2d 862, 868 (5th Cir. 1962); *Genter v. Allstate Prop. and Cas. Ins. Co.,* No. 11CV0709, 2011 WL 2533075, at 2 (WD. Pa. June 24, 2011) in support of it.

Plaintiff's invented quote does not appear in any of the cited cases and the actual language in those opinions does not support Plaintiff's extreme assertion. Instead, the cited cases make it clear that while courts may be "reluctant to grant such motions" they will do so where the insufficiency of the pleading is "clearly apparent." *Sensient Colors*, 580 F. Supp. 2d at 374; *see also Genter v. Allstate Prop. and Cas. Ins. Co.,* No. 11CV0709, 2011 WL 2533075, at 2 (WD. Pa.

13

June 24, 2011) ("A demand for damages that are not recoverable as a matter of law may be stricken pursuant to Rule 12(f).").

Plaintiff also repeatedly relies on *Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli*, 575 F.3d 693, 698 (7th Cir. 2009) for the position that an assessment of the "type of goods" in calculating damages is a factual inquiry and thus is outside the scope of a motion to strike.  Dkt. No. 13 at 20-21.  Once again, the cited opinion does not support Plaintiff's invented holding, and in fact does not discuss this point at all.

### 2.    Plaintiff's Extensive Use of Fake Legal Authority Renders his Opposition Baseless

It is axiomatic that a briefing built on illusory case law – whether the mistaken citations were due to fraudulent intent or careless use of generative AI –"is the epitome of baseless." *Sanders v. U.S.*, 176 Fed. Cl. 163, 169 (2025).  Not only does Plaintiff's reliance on fabricated legal authority demonstrate that Plaintiff's opposition is meritless, but it has also worked real harm, both by wasting New Balance and the Court's time and resources, as well as by eroding public confidence in the legal process.  *Mata*, 678 F. Supp. 3d at 448–49.

When parties have engaged in the use of manufactured case law and fictitious citations as Plaintiff has done here, courts regularly strike the briefs that rely on them.  *See Grant v. City of Long Beach*, 96 F.4th 1255, 1257 (9th Cir. 2024) (striking "brief replete with misrepresentations and fabricated case law"); *O'Brien*, 2025 WL 242924, at *6-7 (striking sur-reply that relied upon false legal authority); *Kruse v. Karlen*, 692 S.W.3d 43, 53 (Mo. App. E. Dist. 2024) (striking party's appeal that relied upon fake case citations and legal authority);  *Powhatan Cty. Sch. Bd. v. Skinger*, No. 3:24CV874, 2025 WL 1559593, at *11 (E.D. Va. June 2, 2025) (striking multiple opposition briefs which contained false case citations and legal authority).  As a very recent example, the Hon. Timothy L. Brooks struck multiple Motions in Limine which were created using

Generative AI and which "contained citations to nonexistent cases and quotations of nonexistent passages." *Hatfield v. Pirani*, CA No. 5:22-CV-5110, Slip Op. at 1 (W.D. Ak July 16, 2025). Finding the inclusion of false legal authority to be "an abuse of the adversary system," the court struck any briefing relying on said citations and issued an order to show cause why further sanctions were not warranted. *Id*. at 1-2 citing *Mata*, 678 F. Supp. 3d at 461.

Nor should a *pro se* party's citation to nonexistent legal authority to support their position be excused. "While courts afford pro se litigants considerable leeway, that leeway does not relieve pro se litigants of their obligation under Rule 11 to confirm the validity of any cited legal authority." *Sanders v. United States*, No. 24-cv-1301, 2025 WL 957666, at *4 (Fed. Cl. Mar. 31, 2025); *see also Anonymous v. New York City Dept. of Educ.*, No. 1:24-CV-04232 (JLR), 2024 WL 3460049, at *7 (S.D.N.Y. July 18, 2024) ("Without question, it is improper and unacceptable for litigants – including pro se litigants – to submit 'non-existent judicial opinions with fake quotes and citations.'"

Here, Plaintiff's opposition briefing is replete with false case citations and quotations including misstating the holdings of at least twenty-seven (27) of the thirty (30) cases cited; inventing false quotations for twenty-three (23); and outright fabricating the existence of two (2) cases. *See* Exhibit A. Nor is Plaintiff an unsophisticated party. While he is representing himself in this dispute, he is an experienced litigator, having brought suits against multiple multinational businesses including Nike, New Balance, and Varsity Brands. *See, e.g.*, *Magee v. BSN Sports LLC*, 3:21-cv-01726-G-BT (N.D. Tex. July 26, 2021); *Magee v. New Balance, Inc.*, 5:23-cv-00923-FB (W.D. Tex. July 27, 2023); *Magee v. BSN Sports LLC*, 3:24-cv-00833-E-BK (N.D. Tex. Apr. 5, 2024). And as Plaintiff himself makes clear in his own Complaint, this is now Plaintiff's third bite at the apple against New Balance, having previously sued New Balance on these same

claims twice before in Texas. *Magee v. New Balance, Inc.*, 5:23-cv-00923-FB (W.D. Tex. July 27, 2023); *Magee v. BSN Sports LLC,* 3:24-cv-00833-E-BK (N.D. Tex. Apr. 5, 2024). Plaintiff has real and extensive litigation experience, and he knew or should have known of his duty of candor to the Court and his obligations to ensure that any filings he submitted to the court are accurate to the best of his knowledge. *Kendrick*, 2022 WL 2388425, at *3; *Hayes*, 763 F. Supp. 3d at 1064.

Moreover, Plaintiff's use of false or illusory legal authority is not merely a clerical error or foot fault. These fake citations are the entire basis for Plaintiff's Opposition and underpin every argument he makes. Excising Plaintiff's extensive and consistent reliance on false legal authority destroys all of Plaintiff's efforts to salvage his defective pleadings. Other than repeatedly stating that the two parties used the same word spelled the same way (Dkt. No. 13 at 3-6), the Opposition fails to provide any analysis or argument regarding how the alleged use of the HOOPLIFE trademark *as it appears on the accused infringing products* is in any way "identical" or "substantially indistinguishable" to Plaintiff's own trademark as it appears on Plaintiff's own products. This is not enough to demonstrate counterfeiting, especially in light of Plaintiff's clear inclusion of imagery showing the parties use of the allegedly infringed trademark to be fundamentally dissimilar. *See Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp.*, 486 F. Supp. 2d 286, 289 (S.D.N.Y. 2007); *Lontex Corp.*, 384 F. Supp. 3d at 546; *One Hanover, LLC v. Witkoff Group LLC*, No. 22 CIV. 2723 (VM), 2023 WL 3304026, at *4 (S.D.N.Y. May 8, 2023); *Arcona, LLC*, 2019 WL 1260625, at *3; *Audemars Piguet*, 2015 WL 150756, at *2; *GTFM*, 2002 WL 1933729, at *2; *see also Lontex*, 107 F.4th at 158–59; *Sturgis*, 908 F.3d at 339-340. Instead, Plaintiff simply attempts to do away with this legal requirement by inventing his own.

Similarly, outside of his attempt to explain away the legal requirement that Plaintiff plausibly plead that New Balance's use was "spurious" through false citations, Plaintiff does not – and cannot – make any efforts to explain how his defective Complaint meets that requirement. *Illinois Tool Works*, 469 F. Supp. 3d at 9; *Lontex Corp*, 384 F. Supp. 3d at 561; *Cohen*, 2022 WL 5250271, at *3. And finally, other than his reliance of fictitious legal authority regarding assessing a motion to strike, Plaintiff in effect argues that while he may have been wrong in his assessment of the statutory damages that are available, it is best to wait and see if his defective prayer for relief could be substantiated through later discovery.  Dkt No. 13 at 21-22.

The removal of Plaintiff's fraudulent legal authority thus completely undermines any arguments Plaintiff raises in his Opposition.  As the entirety of Plaintiff's Opposition briefing relies on false and illusory legal authority, including dozens of non-existent quotations and statements of the law, the court should strike all such arguments and grant New Balance's Motion to Dismiss with prejudice.  In addition, given the extensive and blatant nature of Plaintiff's misrepresentations – especially in light of Plaintiff's substantial litigation experience – the court should issue an order to show cause regarding possible sanctions against Plaintiff.

## II.    CONCLUSION

Plaintiff's extensive and repeated use of false and illusory legal authority, including the creation of dozens of fictitious case citations and quotations, is a serious violation of Plaintiff's obligation of candor before this Court.  Plaintiff had the absolute right and the opportunity to oppose New Balance's motion and to attempt to address the deficiencies in his Complaint, to correct them to the extent they were amenable to correction or – as likely would be required here – by withdrawing his fatally defective counterfeiting claim.  Instead, Plaintiff responded to New Balance's Partial Motion to Dismiss by advancing extensive fake legal authority to support his legally incorrect arguments, to defend his improper threadbare pleadings, and to paper over the

numerous deficiencies identified in New Balance's Motion. In so doing, Plaintiff either knowingly – or through gross and inexcusable negligence – perpetrated a fraud on the Court and not only wasted New Balance's time and resources but also the valuable time and resources of this Court.

Due to Plaintiff's extensive litigation experience, Plaintiff was on notice of his obligations to ensure that any filings he submitted to the court be accurate to the best of his knowledge.  Yet here the entirety of Plaintiff's Opposition briefing relies on false and illusory legal authority, including dozens of non-existent quotations and statements of the law.  As such, the Court should strike Plaintiff's Opposition and grant New Balance's Motion with prejudice.  Moreover, given the extensive and blatant nature of Plaintiff's misrepresentations – especially in light of Plaintiff's substantial litigation experience - New Balance respectfully submits that the Court should issue an order to show cause regarding possible sanctions against Plaintiff.

Dated: July 18, 2025                    Respectfully submitted,

                                        /s/ *Tim Cullen*
                                        Tim Cullen
                                        CULLEN & CO., PLLC
                                        P.O. Box 3255
                                        Little Rock, AR 72203
                                        (501) 370-4800
                                        tim@cullenandcompany.com

                                        OF COUNSEL:

                                        Robert D. Carroll (*Pro Hac Vice application filed*)
                                        Todd Marabella (*Pro Hac Vice application filed*)
                                        GOODWIN PROCTER LLP
                                        100 Northern Avenue
                                        Boston, MA 02210
                                        Tel.: (617) 570-1000
                                        Fax: (617) 523-1231
                                        RCarroll@goodwinlaw.com
                                        TMarabella@goodwinlaw.com

                                        *Attorneys for Defendant New Balance Athletics, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The document above was electronically filed with the court's electronic filing system on July 18, 2025.  The Plaintiff is pro se and is not a registered use with the court's electronic filing system (Doc. 5); therefore, a copy of this document is being served on July 17, 2025, on Plaintiff by both e-mail and U.S. mail, first class postage paid, to the following addresses:

Steven Magee via email: hooplifeonline@yahoo.com

and

Steven Magee
8407 Bandera Road #103-403
San Antonio, TX 78250

*/s/ Tim Cullen*