IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

STEVEN MAGEE                                                      PLAINTIFF

v.                          No. 4:25-cv-265-DPM

NEW BALANCE ATHLETICS, INC.                              DEFENDANT

ORDER

About a decade ago, Steven Magee registered HOOPLIFE® as a trademark for athletic apparel—shirts, pants, jackets, hats, caps, and uniforms. He's in that business. The mark is the term in "standard characters without claim to any particular font, style, size, or color[,]" as required by the drawing regulation applicable to this kind of mark. *Doc. 1 at 30*; 37 C.F.R. § 2.52(a)(1). A few years later Magee registered the same mark for athletic bags, backpacks, and various other bags. *Doc. 1 at 31*. In 2023, the "Hooplife Basketball Academy," which is based in central Arkansas, ordered approximately 900 items of athletic apparel from BSN Sports, a New Balance entity. The company made and supplied them. These jerseys, t-shirts, hoodies, and such had Hooplife, Hooplife Basketball Academy, or both on them. Magee, acting *pro se*, has sued New Balance Athletics, Inc., for trademark infringement. He makes five claims, one of which is infringement by counterfeiting. He seeks approximately $18,000,000 in

damages.  This case is Magee's third effort at pursuing these claims against New Balance.  *Magee v. New Balance, Inc.*, No. 5:23-cv-923-FB (W.D. Tex.);  *Magee v. Varsity Brands Holding Co., Inc.*, No. 3:24-cv-833-E-BK (N.D. Tex.).

New Balance moves to dismiss the counterfeiting claim or strike Magee's enhanced-damages requests rooted in that claim.  15 U.S.C. § 1117(b).  Magee prepared his response using generative AI.  New Balance moves to strike it.  By New Balance's count, Magee's response misstated the holdings of twenty-seven of the thirty cases cited, invented false quotations from twenty-three cases, and fabricated two cases.  *Doc. 16 at 17 & Appendix A*.  Magee apologizes.  He says he was unaware that generative AI could do such things.  He promises to do better in future filings.  He asks the Court to disregard what his response says about nine cases, but consider the rest of his response, or allow a substituted paper.  Magee also moves for summary judgment on his counterfeiting claim.

\*

New Balance's motion to strike Magee's response is granted.  The Court accepts Magee's apology.  That's a good first step.  But Magee is an experienced *pro se* litigant.  He has pursued this dispute diligently in three courts and filed other similar cases about his trademarks.  *E.g., Magee v. BSN Sports, LLC*, No. 3:21-cv-1726-G-BT (N.D. Tex.);  *Magee v. BSN Sports, LLC*, No. 3:25-cv-2485-E-BN (N.D.

Tex).  It should not be necessary to do so, but the Court admonishes him:  Magee must verify all sources he cites in his court filings, especially cases, statutes, regulations, rules,* and other legal authorities; and he must cultivate a healthy skepticism about materials located with internet searches and especially about materials generated by artificial intelligence.

Magee must also show cause by 9 January 2025 why the Court should not impose a monetary sanction.  Magee's response gummed up the case.  It required New Balance to incur unnecessary attorney's fees.  The misstatements and false quotations are so interwoven with the argument that the Court was unable to rely on the document.  Magee's points about counterfeiting had to be gleaned from his other filings.  All this is unacceptable.

*

While the Court is a bit skeptical about Magee's counterfeiting claim, as he argues it, New Balance's motion to dismiss this claim with prejudice now is denied.  The claim is plausible.  Magee's motion for summary judgment on this claim is also denied.

---

*Another example.  Magee withdrew his response to New Balance's motion to strike and filed a substituted version—saying he did so to comply with LOCAL RULE 7.2(e)'s twenty-five-page limit on briefs. *Doc. 19.*  But the Local Rule imposes no page limit.  All the Local Rules are on this Court's website.  https://www.are.uscourts.gov/court-info/local-rules-and-orders/local-rules.

Start with the statute. The Lanham Act imposes liability for nonconsensual commercial use of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark . . ." when the "use is likely to cause confusion, or to cause mistake, or to deceive[.]" 15 U.S.C. § 1114(1)(a). The statute defines some of its terms. "A 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. In another provision, the statute requires that the registered mark be "in use" and that the "counterfeit mark" be "for such goods or services sold, offered for sale, or distributed . . .." 15 U.S.C. § 1116(d)(1)(B)(i).

In the only binding precedent on this issue, the Court of Appeals explained the statute. "A counterfeit is thus far more similar to the registered mark than a mark that barely infringes it, and so an infringing mark is not necessarily also a counterfeit." *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 340 (8th Cir. 2018). The *Sturgis* Court addressed the counterfeit issue as to a design mark (the Monahan mark), not Sturgis Bike Week® or Take the Ride to Sturgis®, the word marks in that case. 908 F.3d at 320, 338, & 339–40. The explanation, though, faithfully applies the statute's definition and helpfully illuminates a deep issue: Whether the average person would be confused about the product. *Kelly-Brown v. Winfrey*, 717 F.3d 295, 314–15 (2d Cir. 2013). "The more fundamental point is that the purpose of trademark law is not to guarantee genuine trademarks but to

-4-

guarantee that every item sold under the mark is the genuine trademarked product, and not a substitute." *General Electric Co. v. Speicher*, 877 F.2d 531, 534 (7th Cir. 1989) (Posner, J.)

HOOPLIFE® is a fanciful term and, the Court assumes, therefore distinctive. RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 13 cmt. b & c (AM. L. INST. 1995). It is a standard character or word mark: "The mark consists of standard characters without claim to any particular font, style, size, or color." *Doc. 1 at 30*. This required definition is sweeping. But the mark's breadth also contains the seeds of difficulty, or perhaps opportunity, for a counterfeiting claim. Comparison is the usual way to determine whether the challenged mark is identical or substantially indistinguishable from the registered mark. *Sturgis*, 908 F.3d at 339–40; *Kelly-Brown*, 717 F.3d at 314–15. New Balance encourages the Court to do some comparing now, deploying the color copies Magee used in his Texas litigation plus the black-and-white copies attached to his complaint. Magee responds that there's no need: All the athletic apparel ordered by Hooplife Basketball Academy included the term Hooplife, so New Balance is a counterfeiter.

Magee's argument seems to prove too much. It would collapse the statute's distinction between a counterfeit mark and any infringing mark. Magee has a plausible infringement claim. New Balance hasn't argued otherwise. While his counterfeiting claim appears overbroad,

perhaps this is simply a function of the word-mark context. The Court's mind is not at rest on this.

As the parties know, and this Court is coming to appreciate, the fighting issue is vexed. "Confusion abounds in the existing case law regarding counterfeiting." Jessica Bromall Sparkman and Rod S. Berman, *Inconsistency and Confusion in the Judicial Treatment of Counterfeiting Claims*, 113 TRADEMARK REP. 553, 586 (2023). If confusion is too strong a conclusion, lack of clarity is not. The Court concludes it can do a better job deciding this important issue in due course—with clearer photographs for comparison, facts about potential confusion, and focused briefing about allegedly counterfeit word marks such as HOOPLIFE®. This is a punt, but sometimes a punt is the best one can do. The Court concludes that the first question is infringement. If there was, then the counterfeiting question and the related damages questions (treble and statutory) will arise. For now, it is enough to hold that Magee's request for enhanced damages stays in the case because he has plausibly alleged counterfeit marks. New Balance is probably correct on the number of types-of-goods issue. 15 U.S.C. § 1117(c). Discovery will clarify the list.

*

Motion to dismiss in part, *Doc. 11*, denied. Motion for partial summary judgment, *Doc. 21*, denied. Both denials are without prejudice. Motion to strike, *Doc. 16*, granted. Magee's response, *Doc.*

*13*, is stricken. Magee must show cause about further sanctions for his generative-AI-infected response by 9 January 2025. The Court regrets its delay in addressing all these motions. For good cause, the Court extends the due date for the parties' Rule 26(f) report to 19 December 2025.

So Ordered.

*WPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

2 December 2025